Michael Anderson, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs to Judges BLATT, WILLIAMS, JR., and DOYLE, sitting as a panel of three.

*Timothy P. Wile,* Assistant Public Defender, for petitioner.

*Robert A. Greevy,* Chief Counsel, with him *Arthur R. Thomas,* Assistant Chief Counsel, *Jay C. Waldman,* General Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE WILLIAMS, JR., March 2, 1984:

Michael Anderson (petitioner) petitions for review of the denial of administrative relief by the Pennsylvania Board of Probation and Parole (Board) from its order of June 15, 1982 recommitting him to serve two years, one month and twenty-eight days backtime and reestablishing his maximum term expiration date (maximum) as January 23, 1988.

On January 24, 1973 the petitioner was sentenced to a term of one year, three months to ten years (original sentence) by Judge STOUT of the Court of Common Pleas of Philadelphia County for Murder-Second Degree. His minimum term expiration date (minimum) was October 10, 1973 and the maximum was July 10, 1982. He was paroled on February 7, 1974; but when his whereabouts became unknown, the Board declared him to be delinquent as of August 4, 1974. Following his apprehension, the Board recommitted him as a technical parole violator (TPV), effective February 19, 1979 and recomputed his maximum as January 16, 1983.

The petitioner was reparoled, effective March 5, 1980; however, he was again arrested and recommitted by the Board as a TPV, effective July 28, 1980. No adjustment was made to his maximum at that time.

Effective June 17, 1981, the petitioner was again reparoled and on November 5, 1981, he was arrested by the Montgomery County authorities (county au-

thorities) on new criminal charges. On November 18, 1981, the Board filed a detainer against the petitioner based on these new criminal charges and for technical parole violations. After being convicted on March 18, 1982 in the Court of Common Pleas of Montgomery County, he was sentenced to a term of time served to twenty-three months plus two years of county probation. He remained in the custody of the county authorities thereafter until the Board, after conducting the requisite hearing, ordered him recommitted as stated above.

In recomputing the petitioner's backtime, the Board did not credit him for the period which he spent in the custody of the county authorities after March 18, 1982 and in reestablishing his maximum, the Board included the periods which he spent at liberty when he was paroled in 1974 and in 1980. The petitioner asserts here that the Board erred in both instances.

In reviewing an adjudication by the Board, we are limited to a determination of whether it is supported by substantial evidence, is in accordance with the law and is observant of the petitioner's constitutional rights. *Stevenson v. Pennsylvania Board of Probation and Parole*, 74 Pa. Commonwealth Ct. 540, 460 A.2d 409 (1983). The questions presented by the petitioner are whether the period which he spent in the custody of the county authorities after March 18, 1982 should be credited against his original sentence and whether the time which he spent at liberty when he was paroled in 1974 and 1980 can be included in the recomputation of his maximum.

In regard to the first question, the petitioner contends that he was granted county parole effective March 18, 1982 and that he was being held by the county authorities thereafter solely because of the Board's detainer and that, under such circumstances, the rule

of *Hines v. Pennsylvania Board of Probation and Parole*, 491 Pa. 142, 420 A.2d 381 (1980) requires that such time be credited against his original sentence.[1] The Board attempts to counter this argument by asserting that he was not being held by virtue of its detainer during that period, but rather it implies that he was serving time on his March 18, 1982 conviction. The Board maintains that the certified record of this case, which it has submitted, clearly indicates that the petitioner was granted county parole on June 8, 1982. We disagree. We have carefully searched the entire record in this case and have found no competent evidence to support a June 8, 1982 county parole date. We are persuaded by the common sense of the petitioner's argument that the sentence which he received on March 18, 1982 would immediately free him from the custody of the county authorities were it not for the Board's detainer. Therefore, we conclude that the claimant was held after March 18, 1982 solely because of the Board's detainer and, consequently, we must conclude that under *Hines* the Board erred when it refused to credit the time spent by the petitioner in the custody of the county authorities after March 18, 1982 against his original sentence.

The petitioner also contends that the Board erred when it recomputed his maximum by including in its

---

1 As acknowledged by the petitioner's brief, this question usually arises with regard to time spent by a parolee in pretrial custody. *See, e.g.. Gaito v. Pennsylvania Board of Probation and Parole*, 488 Pa. 397, 412 A.2d 568 (1980) ; *Lawrence v. Pennsylvania Board of Probation and Parole*, 72 Pa. Commonwealth Ct. 440, 456 A.2d 1154 (1983). While it is true that the period in question here is post-trial, the record herein fails to indicate why the petitioner was being held and his March 18, 1982 sentence is inconsistent with his being held thereafter by the county authorities without some authorization from the Board to do so. Moreover, our reading of *Gaito, Hines* and *Lawrence* reveals no reason why the result here should be otherwise.

calculations the time which he spent on parole in 1974 and in 1980. He argues that the Board can increase his maximum only by the time which he spent on parole since his last reparole on June 17, 1981.

Section 21.1(a) of the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, 61 P.S. §331.21a(a), provides, in pertinent part, that if a parolee is recommitted as a convicted parole violator (CPV) "he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole . . . ." In *Haun v. Cavell*, 190 Pa. Superior Ct. 346, 154 A.2d 257 (1959), *cert. denied*, 363 U.S. 855 (1960), the above-cited provisions of Section 21.1(a) were construed by the Superior Court to mean that a recommitted parole violator was required to serve that portion of the sentence actually remaining on the date of his release on parole. However, Section 21.1(a) does not distinguish between parolees recommitted after only one period of parole and those such as the petitioner who have had several intermittent periods of parole and the *Haun* court had no need to specify whether it was referring to the original parole date or the most recent date of parole.

Neither the petitioner nor the Board has cited any case on point and our research has revealed no such precedent. Therefore, we must carefully consider the statutory language involved in accordance with the established rules of construction as found in the Statutory Construction Act of 1972, 1 Pa. C. S. §§1501-1991, in order to resolve this question.

Section 1921, 1 Pa. C. S. §1921, provides in pertinent part:

>     (a) The object of all interpretation and construction of statutes is to ascertain and ef-

fectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all of its provisions.

. . . .

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

. . . .

(3) The mischief to be remedied.
(4) The object to be attained.

. . . .

(6) The consequences of a particular interpretation.

. . . .

Section 1922(1), 1 Pa. C. S. §1922(1), provides in pertinent part:

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

With these principles in mind, we must now ascertain the legislative intent behind Section 21.1(a) and determine whether either of the constructions advanced by the parties is in harmony therewith.

Clearly, the General Assembly intended Section 21.1(a) to be a strong deterrent to prevent parolees from returning to criminal behavior while enjoying the conditional liberty of parole. Section 21.1(a) not only requires that a CPV forfeit time spent on parole when recommitted, but also mandates that any new sentence

be served consecutively, not concurrently, with the original sentence. *Haun,* 190 Pa. Superior Ct. at 352-355, 154 A.2d at 260-262. As a parolee approaches his maximum, the statute operates to increase his incentive to refrain from criminal activity. The longer he has been on parole, the longer the period for which he can be recommitted.

It is the petitioner's unsupported position that Section 21.1(a) requires CPV's to forfeit only that time on parole accumulated since the date of the most recent release on parole. He argues that the Board has no power to have a parolee forfeit parole time earned prior to a recommitment as a CPV where he previously has been recommitted as a TPV.[2] Under this interpretation, a parolee with one or more prior recommitments as a TPV faces a substantially reduced period of confinement should he subsequently be recommitted as a CPV and the intended deterrent effect would be weakened accordingly. Moreover, we agree with the Board that the adoption of the petitioner's position would render an absurd result as the following example clearly demonstrates.

On January 1, 1970 two individuals, X and Y, are sentenced to identical prison terms of one year to ten years with a maximum of January 1, 1980. Both are paroled on January 1, 1971 after serving the minimum. X commits no technical violations of his

---

[2] The petitioner apparently does not contend that prior recommitments due to criminal convictions while on parole would also deprive the Board of the power to include such prior periods in its recomputation of the maximum for a CPV. Although, this question is not directly raised in this case, it seems beyond argument that if one or more recommitments due to mere technical violations of parole, which need not be crimes, require the forfeiture of all of the parolee's time spent on prior paroles as we hold here, then recommitment due to one or more criminal convictions while on parole would require the same result.

parole and has no other difficulties until he is arrested and convicted on January 1, 1979. X is recommitted thereafter, as a CPV. Y, however, does commit a technical parole violation and he is recommitted as a TPV on January 1, 1978 to serve one month. He is reparoled on February 1, 1978 and he, like X, is subsequently arrested and convicted on January 1, 1979. Under the interpretation advanced by the petitioner, Y would forfeit only the time between his reparole on February 1, 1978 and his conviction on January 1, 1979, eleven months, and his maximum could be extended only to December 1, 1980. However, X, who had a trouble free parole until his arrest and conviciton on January 1, 1979, would forfeit, on recommitment, seven years and eleven months and his maximum would be extended to January 1, 1988. Under such circumstances, the individual with the better parole record would receive the harsher treatment. We cannot believe that such a result was intended by the legislature and, therefore, we reject the petitioner's argument. We find that the practice followed by the Board in the instant case to be consonant with the legislative intent of Section 21.1(a) and will affirm the inclusion of the periods which the petitioner spent on parole in 1974 and 1980 in the recomputation of his maximum after his recommitment as a CPV.

However, due to our conclusion that the petitioner must receive credit against his original sentence for the time which he spent in custody following his March 18, 1982 conviction, we remand the record of this case to the Board for the necessary recomputations of the petitioner's backtime and maximum.

ORDER

AND Now, this 2nd day of March, 1984, the order of the Pennsylvania Board of Probation and Parole

in the above-captioned matter is reversed in part and affirmed in part and the record is remanded to the Board for recomputation of the petitioner's backtime and maximum term expiration date in a manner consistent with this opinion.

Jurisdiction relinquished.