**Alan Troy HOUSER, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted July 12, 1996.

Decided Sept. 26, 1996.

Ellen K. Barry, Assistant Public Defender, for Petitioner.

Robert A. Greevy, Assistant Chief Counsel, for Respondent.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Alan Troy Houser (Houser) appeals from the denial of his request for administrative

relief of the Pennsylvania Board of Probation and Parole (Board) from an order recommitting him as a convicted parole violator. We affirm.

Houser's counsel filed a petition to withdraw from representation in this appeal. In considering the petition, this Court recounted the facts as follows:

Houser was originally sentenced to six to fifteen years imprisonment by the Honorable Gilfert M. Mihalich of the Court of Common Pleas of Westmoreland County for burglary, aggravated assault and robbery. His minimum term expiration date was November 7, 1991, and the maximum date was November 7, 2000. He was paroled on February 5, 1993. Thereafter, the Board recommitted Houser to a state correctional institution for multiple technical violations, effective November 19, 1993.

On May 19, 1994, Houser was reparoled until July 10, 1994, when he was arrested and charged with aggravated assault and simple assault. Houser was held in the Westmoreland County Prison (county prison) for failure to post bail. On October 4, 1994, Houser pled guilty to the simple assault charge and was sentenced to serve eight to twenty-three months. He remained in county prison serving time on the new sentence until he was granted county parole and released to the Board's custody effective January 29, 1995.

While Houser was detained in county prison, the Board held a parole revocation hearing for the purpose of considering Houser's second criminal conviction. In a decision dated February 27, 1995, the Board recommitted Houser as a convicted parole violator to serve fifteen months back-time and recomputed his maximum term expiration date as April 22, 2002.

Houser requested administrative review of the Board's decision. By letter dated August 2, 1995, the Board denied Houser's

request and he appealed to this Court. On August 23, 1995, the Cumberland County Public Defender's Office (Public Defender) was assigned to represent Houser. Thereafter, Houser's counsel filed a "no-merit" letter and applied for leave to withdraw asserting that Houser's case is without merit.

*Houser v. Pennsylvania Board of Probation and Parole,* 675 A.2d 787, 788 (Pa.Cmwlth. 1996).

██ Appointed counsel may withdraw from representing an indigent parolee in appealing a parole revocation order, if counsel demonstrates that she has conducted an exhaustive examination of the record and made a good faith determination that the case is wholly frivolous. *Epps v. Pennsylvania Board of Probation and Parole,* 129 Pa. Cmwlth. 240, 565 A.2d 214 (1989). These requirements are in place "to assure a careful assessment of any available claims that an indigent appellant might have." *Craig v. Pennsylvania Board of Probation and Parole,* 93 Pa.Cmwlth. 586, 502 A.2d 758 (1985).

In accordance with Pennsylvania law, we reviewed the record and determined that counsel did not present any analysis of Houser's contention that the Board exceeded statutory authority in extending the maximum date of his original sentence.[1] Counsel's "no-merit" letter revealed that she did not conduct an adequate review and we could not agree with her determination that the appeal was frivolous. Accordingly, we denied the motion to withdraw and instructed counsel to file a brief addressing whether the Board erred in recomputing Houser's maximum expiration date.

██ On appeal, Houser contends that the Board exceeded its statutory authority when it extended the maximum date of his original sentence in violation of Section 21.1(b) of the Act of August 6, 1941, P.L. 861, *as amended,* (commonly referred to as the Parole Act),

---

**1.** We note that counsel did not cite any case law in her "no-merit" letter to support the proposition that the time Houser spent on parole prior to his recommitment for technical violations

from February 5, 1993, until November 19, 1993, a period of nine months and 14 days, was correctly added to his maximum release date.

added by the Act of August 24, 1951, P.L. 1401, 61 P.S. § 331.21a,[2] which requires that a parolee, recommitted for technical parole violations only, must be given credit for time on parole in good standing. Houser argues that parole time is tantamount to imprisonment and the Board must credit his maximum expiration date for the time he spent on parole in good standing between February 5, 1993, and November 19, 1993.[3]

We recognized the question raised by Houser while scrutinizing counsel's petition to withdraw:

> The computation with respect to credit for time spent on parole for convicted parole violators is dramatically different from the computation for technical parole violators. A convicted parole violator cannot receive credit against his maximum sentence for time spent at liberty while on parole. *Sherrell v. Pennsylvania Board of Probation and Parole*, 111 Pa.Cmwlth. 209, 533 A.2d 1089 (1987). However, Section 21.1(b) mandates that technical parole violators receive credit against their maximum sentence for time spent at liberty on parole in good standing. *Smith v. Pennsylvania Board of Probation and Parole*, 131 Pa.Cmwlth. 360, 570 A.2d 597 (1990).
>
> Our review of the record reveals that the Board did not extend Houser's maximum sentence date when Houser was first recommitted for technical parole violations at the conclusion of his initial parole period which ran for nine months and fourteen days from February 5, 1993, until November 19, 1993. Houser was reparoled and subsequently recommitted as a convicted parole violator. At that time, the Board did extend Houser's maximum expiration date from November 7, 2000, to April 22, 2002, an increase of over one year and five months. The Board included in that extension the nine months and fourteen days that Houser spent at liberty while on parole prior to his November 19, 1993, recommitment which was for technical violations.

*Houser*, 675 A.2d at 790.

This Court previously considered the issue of whether the time a parolee spent on parole in good standing prior to recommitment for technical violations was correctly added to his maximum sentence after his recommitment as a convicted parole violator in *Anderson v. Pennsylvania Board of Probation and Parole*, 80 Pa.Cmwlth. 574, 472 A.2d 1168 (1984). In *Anderson*, the Board did not extend the parolee's maximum sentence date when he was first recommitted for technical parole violations at the conclusion of an initial parole period in 1974 and a subsequent parole period in 1980. After reparole and recommitment as a convicted parole violator, the Board reestablished the parolee's maximum date including time served while at liberty on parole in 1974 and 1980.

On appeal, we contemplated the legislative intent behind Section 21.1(a) of the Parole

---

**2.** Section 21.1(b) of the Parole Act provides:
(b) Technical Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution in the Commonwealth who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime of which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere in a court of record, may be recommitted after hearing before the board. *If he is so recommitted, he shall be given credit for the time served on parole in good standing but with no credit for delinquent time, and may be reentered to serve the remainder of his original sentence or sentences. Said remainder shall be computed by the board from the time his delinquent conduct occurred for the unexpired period of the maximum sentence imposed by the court without credit for the period the parolee*

*was delinquent on parole, and he shall be required to serve such remainder so computed from the date he is taken into custody on the warrant of the board.* Such prisoner shall be subject to reparole by the board whenever in its opinion the best interests of the prisoner justify or require his being reparoled and it does not appear that the interests of the Commonwealth will be injured thereby. (Emphasis added).

**3.** Our scope of review is limited to a determination of whether necessary findings are supported by substantial evidence, an error of law was committed, or whether constitutional rights of the parolee were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Shaffer v. Pennsylvania Board of Probation and Parole*, 675 A.2d 784 (Pa.Cmwlth.1996).

Act, 61 P.S. § 331.21a,[4] which specifically provides that convicted parolees shall receive no credit for time spent on parole:

> Clearly, the General Assembly intended Section 21.1(a) to be a strong deterrent to prevent parolees from returning to criminal behavior while enjoying the conditional liberty on parole.... As a parolee approaches his maximum, the statute operates to increase his incentive to refrain from criminal activity. The longer he has been on parole, the longer the period for which he can be recommitted.

*Anderson,* 472 A.2d at 1171. We found "the practice followed by the Board in the instant case to be consonant with the legislative intent of Section 21.1(a) and ... affirm[ed] the inclusion of the periods which the petitioner spent on parole in 1974 and 1980 in the recomputation of his maximum...." *Id.* at 1172.

■ According to *Anderson* as well as other decisions of this Court, parolees in positions similar to Houser's do not receive credit for time served while at liberty on parole in good standing prior to technical violations when recommitted as a convicted parole violators. *See Morris v. Pennsylvania Board of Probation and Parole,* 77 Pa.Cmwlth. 85, 465 A.2d 97 (1983); *Caldwell v. Pennsylvania Board of Probation and Parole,* 98 Pa. Cmwlth. 157, 511 A.2d 884 (1986); and *Andrews v. Pennsylvania Board of Probation and Parole,* 101 Pa.Cmwlth. 468, 516 A.2d 838 (1986). This Court noted that to hold otherwise

would benefit a parolee who committed a technical parole violation and then received a reparole ... by shielding him from forfeiture of the street time which preceded the technical violation, while affording no such benefit to a parolee who is free on parole for a like total period, but who commits no technical violation.

*Morris,* 465 A.2d at 98. The Board properly denied credit on Houser's maximum sentence for the time on parole that he earned prior to recommitment as a technical parole violator.[5]

Accordingly, we affirm.

### ORDER

AND NOW, this 26th day of September, 1996, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. The majority holds that, because Alan Troy Houser (Houser) was recommitted as a convicted parole violator, Houser must lose the credit which he previously received for time served while on parole in good standing prior to technical parole violations. This holding is based on the following cases: *Andrews v. Pennsylvania Board of Probation and Parole,* 101 Pa. Cmwlth. 468, 516 A.2d 838 (1986); *Caldwell v. Pennsylvania Board of Probation and Parole,* 98 Pa.Cmwlth. 157, 511 A.2d 884 (1986); *Anderson v. Pennsylvania Board of*

---

4. Section 21.1(a) of the Parole Act provides:

   (a) Convicted Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendre at any time thereafter in a court of record, may, at the discretion of the board, be recommitted as a parole violator. *If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty while on parole.* The board may, in its discretion, repa-

role whenever, in its opinion, the best interests of the prisoner justify or require his release on parole and its [sic] does not appear that the interests of the Commonwealth will not be injured thereby. The period of time for which the parole violator is required to serve shall be computed from and begin on the date that he is taken into custody to be returned to the institution as a parole violator. (Emphasis added).

5. We reject the language of this Court's prior decision in *Gregory v. Pennsylvania Board of Probation and Parole,* 111 Pa.Cmwlth. 118, 533 A.2d 509 (1987), to the extent that it appears to conflict with our resolution of the issue in this matter.

*Probation and Parole*, 80 Pa.Cmwlth. 574, 472 A.2d 1168 (1984); *Morris v. Pennsylvania Board of Probation and Parole*, 77 Pa. Cmwlth. 85, 465 A.2d 97 (1983). However, this court has since held in *Gregory v. Pennsylvania Board of Probation and Parole*, 111 Pa.Cmwlth. 118, 533 A.2d 509, 511–12 (1987) (emphasis added), as follows:

> We now hold that where a parolee is recommitted for technical violations only, the plain meaning of the statutory language in Section 21.1(b) is that the parolee must be given credit for street time served in good standing and may not be recommitted beyond the expiration date of the original sentence. We also hold that *the recommitment of a parolee as a convicted parole violator in a separate and later proceeding by the Board does not expunge the parolee's entitlement to credit for street time served in good standing as it affects technical parole violation recommitment time* nor does it extend the time of the expiration of the parolee's original sentence as it affects technical parole violation recommitment time.

Quite clearly, this court has taken two conflicting positions with respect to the issue before the court here. However, because *Gregory* represents this court's most recent statement of the law on the matter and because *Gregory* is faithful to the plain meaning of the statutory language, I believe that *Gregory* must control the outcome in this case.[1]

---

1. In *Gregory*, this court focused on the plain language of section 21.1(b) of the Act of August 6, 1941 (commonly known as the Parole Act), P.L. 861, *as amended*, added by section 5 of the Act of August 24, 1951, P.L. 1401, 61 P.S. § 331.21a(b) (emphasis added), which provides as follows:
   > (b) Technical Violators. Any parolee ... who, during the period of parole, violates the terms and conditions of parole ... may be recommitted after hearing before the board. If he is so recommitted, *he shall be given credit for the time served on parole in good standing* ... and may be reentered to serve the remainder of his original sentence....
   No provision of the Parole Act provides for the *subsequent* withdrawal of this credit. Section 21.1(a) of the Parole Act, 61 P.S. § 331.21a(a) (emphasis added), provides:
   > (a) Convicted Violators. Any parolee ... who, during the period of parole ... commits any

Accordingly, I would reverse and remand this case for recomputation of Houser's maximum sentence date, giving him credit for the time which he served while on parole in good standing prior to his technical parole violations.

---

crime punishable by imprisonment, for which he is convicted ..., may, at the discretion of the board, be recommitted as a parole violator. *If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty while on parole.*

In other words, when an inmate is released on parole and commits technical parole violations, e.g., failure to report, his time at liberty prior to the technical violations is "good time," for which the parolee receives credit against his maximum unexpired sentence. However, if a parolee is convicted of a criminal offense while on parole, his time at liberty prior to the commission of the crime is *not* considered "good time," and the parolee may receive no credit for it.