Matthew ARMBRUSTER, Petitioner

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 15, 2006.

Decided March 13, 2007.

David Crowley, Bellefonte, for petitioner.

Chad L. Allensworth, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Matthew Armbruster (Armbruster) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) which denied his request for administrative relief from a Board order recommitting Armbruster as a technical and convicted parole violator and recalculating his parole availability date and maximum expiration date. Also before this Court is the Board's motion for remand to correct a clerical error. We grant the Board's motion for remand and affirm the Board's order in all other respects.

Armbruster, an inmate currently incarcerated at the State Correctional Institution at Rockview (SCI–Rockview), was initially sentenced on January 23, 1991, to serve an aggregate term of three to thirty years (original sentence) with a minimum expiration date of June 21, 1993 and a maximum expiration date of June 21, 2020. Certified Record (C.R.) at 1. Armbruster was released on parole on his minimum expiration date, June 21, 1993. C.R. at 5.

Following his initial release on parole, Armbruster was paroled and recommitted several times and his maximum expiration date was recalculated each time. By Board action dated March 20, 1997, Armbruster was recommitted as both a technical and convicted parole violator; his maximum expiration date was recalculated to February 3, 2024. C.R. at 11–12. On October 16, 1998, the Board reparoled Armbruster from his original sentence to his detainer sentence. C.R. at 18. The Board then paroled Armbruster from his detainer sentence to an approved home plan on September 20, 1999. C.R. at 24. By decision dated November 27, 2000, the Board recommitted Armbruster as a technical parole violator on his original sentence and recalculated his parole violation maximum date for that sentence to February 28, 2024. C.R. at 33–34. Armbruster was reparoled again from his original sentence and his detainer sentence on July 2, 2001. C.R. at 38. On February 7, 2002, the Board recommitted Armbruster as a technical parole violator on his original sen-

tence; the maximum date remained February 28, 2024. C.R. at 42.

On August 4, 2003, the Board reparoled Armbruster from his original sentence for the fourth time. Armbruster was subsequently declared to be delinquent by the Board effective May 12, 2004. C.R. at 52. On January 13, 2005, Johnstown Police arrested Armbruster on new criminal charges. C.R. at 57–63. Armbruster did not post bail from these charges. C.R. at 63. A Board detainer was lodged against Armbruster that same day. C.R. at 54. On July 6, 2005, Armbruster was convicted on the new criminal charges, and sentenced on August 30, 2005 to a term of eight to twenty-four months (new sentence). C.R. at 140–141, 156–163. The trial court's sentencing orders do not indicate that Armbruster is to receive credit for time served. C.R. at 156–163.

On December 14, 2005, a violation/revocation hearing was held. C.R. at 133–155. By decision dated March 8, 2006, the Board recommitted Armbruster as a technical and convicted parole violator. C.R. at 171–172. The Board recalculated Armbruster's maximum expiration date to June 22, 2027 and advised that Armbruster would be reviewed for parole in or after July 2007. C.R. at 171–712. The recalculation reflected that Armbruster forfeited credit for the current period on parole from August 4, 2003 to January 3, 2006 (883 days); forfeited credit for the previous periods he was on parole from September 20, 1999 to April 21, 2000 (214 days) and from July 2, 2001 to October 23, 2001 (113 days); and became available to serve his original sentence on January 3, 2006. C.R. at 173.

On April 6, 2006, the Board received a *pro se* request for administrative relief from Armbruster objecting to the June 22, 2027 parole violation maximum date and the July 2007 review date. C.R. at 176–183. On May 5, 2006, the Board denied Armbruster's request and affirmed the March 8, 2006 decision. C.R. at 184–185. From this decision, Armbruster petitions for review with this Court.[1] The Board has filed a motion for remand on the grounds that Armbruster's maximum date should actually be May 26, 2028, not June 22, 2027, based upon the discovery of a clerical error.

In this appeal, Armbruster presents the following issues for our review:

1. Did the Board err by failing to credit Armbruster's original sentence with all the time to which he is entitled.

2. Did the Board err by refusing to apply confinement credit in an equitable manner and cause Armbruster to serve a harsher sentence due to his inability to post bail on his new charges.

 Before reaching the merits of Armbruster's appeal, we shall first address the Board's motion for remand to correct a clerical error. To begin, this Court has held that an administrative agency, on its own motion, having provided the proper notice and explanation, may correct typographical, clerical and mechanical errors obviated and supported by the record. *Lord v. Pennsylvania Board of Probation and Parole,* 135 Pa.Cmwlth. 225, 580 A.2d 463, 465 (1990), *petition for allowance of*

---

1. This Court's scope of review of a decision by the Board is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether the constitutional rights of the parolee was violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704, *Gaito v. Pennsylvania Board of Probation and Parole,* 128 Pa.Cmwlth. 253, 563 A.2d 545 (1989), *petition for allowance of appeal denied,* 525 Pa. 589, 575 A.2d 118 (1990).

*appeal denied,* 528 Pa. 619, 596 A.2d 801 (1991); *see Murgerson v. Pennsylvania Board of Probation and Parole,* 135 Pa. Cmwlth. 10, 579 A.2d 1335 (1990) (we allowed the Board to correct a clerical error to properly reflect the total amount of backtime to be served where the error involved merely the Board's failure to add convicted violator and technical violator backtime together, and both were correctly reflected in the original order.).

 Section 21.1(a) of what is commonly referred to as the "Parole Act"[2] provides that a parolee may be recommitted as a convicted parole violator if the parolee commits any crime punishable by imprisonment, while on parole, from which he is convicted or found guilty. Section 21.1(a) further provides that a convicted parole violator "shall be given no credit for the time at liberty on parole." 61 P.S. § 331.21a. Upon recommitment as a convicted parole violator, the parolee must serve the remainder of the term which he would have been compelled to serve had he not been paroled with no credit given for street time. *Id.; Stepoli v. Pennsylvania Board of Probation and Parole,* 106 Pa. Cmwlth. 197, 525 A.2d 888 (1986). When computing the time yet to be served on the original sentence, the convicted parole violator's street time is added to the original maximum expiration date to create a new maximum expiry. *Palmer v. Pennsylvania Board of Probation and Parole,* 704 A.2d 195 (Pa.Cmwlth.1997). While Section 21.1(b) of the Parole Act, 61 P.S. § 331.21a(b), provides that a technical parole violator will be given credit for street time served in good standing, time spent in good standing prior to recommitment for technical violations is not shielded from forfeiture where the parolee subsequently commits a new crime and is recommitted as a convicted parole violator. *Houser v. Pennsylvania Board of Probation and Parole,* 682 A.2d 1365 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 547 Pa. 759, 692 A.2d 568 (1997); *Anderson v. Pennsylvania Board of Probation and Parole,* 80 Pa.Cmwlth. 574, 472 A.2d 1168 (1984). Thus, upon recommitment as a convicted parole violator, in addition to losing all time spent at liberty during the current parole, a parolee will also forfeit all credit received for time spent in good standing while on parole prior to his previous recommitment as a technical parole violator. *Palmer; Houser.*

In this case, Armbruster was recommitted as a convicted parole violator and, as a result, the Board recalculated his parole violation maximum date to June 22, 2027. According to the Board, the Board had intended this calculation to reflect that Armbruster forfeited credit for the current period he was on parole as well as the prior periods he was on parole. However, due to a clerical error, this calculation only reflects that Armbruster forfeited credit for the current period he was on parole and a portion of the prior period he was on parole.

 The June 22, 2027 parole violation maximum date reflects that Armbruster forfeited credit for prior periods he was on parole from August 4, 2003 to January 3, 2006 (883 days), September 20, 1999 to April 21, 2000 (214 days) and from July 2, 2001 to October 23, 2001 (113 days). The record shows that Armbruster was also at liberty on parole from October 16, 1998 to September 20, 1999 (339 days). Pursuant to Section 21.1(a) of the Parole Act, Armbruster must also forfeit credit for the

---

**2.** Act of August 6, 1941, P.L. 861, *added by* Section 5 of the Act of August 24, 1951, P.L. 1401, *as amended,* 61 P.S. § 331.21a.

period he was at liberty on parole from October 16, 1998 to September 20, 1999. We will therefore grant the Board's motion for remand to correct this error.[3]

Turning now to the merits of Armbruster's appeal, Armbruster contends that the Board erred as a matter of law by failing to credit Armbruster's original sentence with all the time to which he is entitled causing Armbruster to serve a harsher sentence due to his inability to post bail on the new criminal charges. Specifically, Armbruster argues that he is entitled to 250 days of credit on his original sentence for the period he was incarcerated from January 13, 2005 to September 20, 2005 on both the new criminal charges and the Board's detainer because this credit was not applied to his new sentence. We disagree.

The general rule governing the allocation of credit for time served awaiting disposition of new criminal charge was established by our Supreme Court in *Gaito v. Pennsylvania Board of Probation and Parole,* 488 Pa. 397, 412 A.2d 568 (1980). The Supreme Court held that "time spent in custody pursuant to a detainer warrant shall be credited to a convicted parole violator's original term ... only when the parolee was eligible for and had *satisfied bail requirements for the new offense* and thus remained incarcerated only by reason of the detainer warrant lodged against him." *Gaito,* 488 Pa. at 403, 412 A.2d at 571 (quoting *Rodriques v. Pennsylvania Board of Probation and Parole,* 44 Pa. Cmwlth. 68, 403 A.2d 184, 185–86 (1979)) (emphasis added). If, on the other hand, "a parolee is not convicted, or if no new *sentence* is imposed for that conviction on

the new charge, the pre-trial custody time must be applied to the parolee's original sentence." *Gaito,* 488 Pa. at 404, 412 A.2d at 571 n. 6 (emphasis added).

Following *Gaito,* this Court consistently held that once a parolee is sentenced on a new criminal offense, the period of time between arrest and sentencing, when bail is not satisfied, must be applied toward the new sentence, and not to the original sentence. *Davidson v. Pennsylvania Bd. of Probation and Parole,* 722 A.2d 232 (Pa. Cmwlth.1998); *Blagman v. Pennsylvania Board of Probation and Parole,* 77 Pa. Cmwlth. 589, 466 A.2d 758 (1983); and *Foster v. Pennsylvania Board of Probation and Parole,* 70 Pa.Cmwlth. 520, 453 A.2d 707 (1982). Even if the new "sentence" imposed is only a fine or a period of probation, and not a period of incarceration, we held that the convicted parolee is not entitled to credit on the original sentence for time served awaiting disposition of those pending charges. *See, e.g., Gallagher v. Pennsylvania Board of Probation and Parole,* 804 A.2d 729 (Pa.Cmwlth. 2002) (probation); *McCoy v. Pennsylvania Board of Probation and Parole,* 793 A.2d 1004 (Pa.Cmwlth.2002) (fine); *Owens v. Pennsylvania Board of Probation and Parole,* 753 A.2d 919 (Pa.Cmwlth.2000) (a sentence of guilt without further penalty was a sentence of time served to which all of the pre-sentence custody credit could be applied); *Smarr v. Pennsylvania Board of Probation and Parole,* 748 A.2d 799 (Pa. Cmwlth.2000) (probation). We also held that a parolee who receives a new sentence, which is less than the period of time spent in pre-sentence custody, is not entitled to credit against his original sentence

---

**3.** To conclude otherwise and preclude the Board from taking corrective action would essentially result in the Board commuting a portion of Armbruster's sentence that he was statutorily required to serve. The Board lacks authority to commute a sentence either intentionally or by way of clerical error. *Commonwealth ex rel. Banks v. Cain,* 345 Pa. 581, 28 A.2d 897 (1942); *Commonwealth v. J.C.K.,* 438 Pa.Super. 1, 651 A.2d 144 (1994).

for that excess time. *Berry v. Pennsylvania Board of Probation and Parole,* 756 A.2d 135 (Pa.Cmwlth.2000). According to our analysis, it did not matter whether or not there was a new sentence with which to apply credit, a parolee could never receive pre-sentence confinement credit on his original sentence where he was sentenced on the new charges and did not post bail. On the other hand, if no new sentence was imposed due to an acquittal of the new criminal charges, the confinement time served awaiting disposition of the new criminal charges, where bail is not satisfied, shall be credited to a convicted parole violator's original term. *Morrison v. Pennsylvania Board of Probation and Parole,* 134 Pa.Cmwlth. 488, 578 A.2d 1381 (1990) (acquittal); *Davidson v. Pennsylvania Board of Probation and Parole,* 667 A.2d 1206 (Pa.Cmwlth.1995) (nol pros).

In *Martin v. Pennsylvania Board of Probation and Parole,* 576 Pa. 588, 840 A.2d 299 (2003), our Supreme Court disagreed with our interpretation of *Gaito* regarding allocation of pre-sentence confinement time when a new sentence is imposed and specifically disapproved of our opinions in *Gallagher, McCoy, Berry, Owens,* and *Smarr. See Hears v. Pennsylvania Board of Probation and Parole,* 851 A.2d 1003 (Pa.Cmwlth.2004) (abrogation recognized). In *Martin,* the Supreme Court addressed the question of what credit is owed to a parolee who is incarcerated, because of both a Board warrant and new criminal charges, while awaiting trial on the criminal charges. Therein, the parolee, James Martin, while on parole from a robbery sentence, was arrested on May 30, 2000 and charged with, *inter alia,* two counts of driving under the influence (DUI). *Martin,* 576 Pa. at 591, 840 A.2d at 300. On the same day, the Board lodged a detainer against him. *Id.* Martin did not post bail. *Id.* Martin was convicted of DUI on July 19, 2001 and sentenced to 48 hours time served, with one-year of probation to be served after serving his robbery sentence. *Id.*

On November 6, 2001, after a parole revocation hearing, Martin was recommitted to serve six-months of backtime as a convicted parole violator. *Id.* at 592, 840 A.2d at 300–01. He filed for administrative relief with the Board challenging its re-calculation of his maximum expiration date and asserting that the Board had failed to give him credit for all of the time he had served on the Board's detainer. *Id.* Specifically, he argued that, because his new sentence was 48 hours time served, with a consecutive one-year probationary period, he should have received credit on his original sentence for the remaining time he spent as a pre-sentence detainee (from June 1, 2000 to July 19, 2001). *Id.* at 592, 840 A.2d at 301. The Board disagreed and denied his request. This Court, relying upon a series of cases that we had construed under our understanding of *Gaito,* affirmed. On appeal, our Supreme Court reversed. *Id.*

The *Martin* Court explained that its decision in *Gaito* was intended to establish that an offender should receive credit on his original sentence for pre-sentence incarceration where the conviction for the new charge does not lead to a new period of incarceration. Significantly, the Court discussed a footnote in *Gaito* that had been misconstrued. *Id.* at 599, 840 A.2d at 305. The footnote stated that "if a parolee is not convicted, or if no new *sentence* is imposed for that conviction on the new charge, the pre-trial custody time must be applied to the parolee's original sentence." *Gaito,* 488 Pa. at 404, 412 A.2d at 571 n. 6 (emphasis added). The *Martin* Court explained that what it intended to convey in the footnote was that:

if a parolee is not convicted, or if no new [period of incarceration] is imposed for that conviction on the new charge, the pre-trial custody time must be applied to the parolee's original sentence. Our use of the word 'sentence' instead of 'period of incarceration,' inadvertently directed the Board and the Commonwealth Court to the statutory definition of 'sentence,' which includes sentencing alternatives other than incarceration.

*Martin,* 576 Pa. at 599–600, 840 A.2d at 305 (internal quotations omitted).

The *Martin* Court held that where an offender is incarcerated on both the Board's detainer and new criminal charges, all time spent in confinement must be credited to *either* the new sentence or original sentence. Otherwise, an indigent offender, who is unable to post bail, would serve more time in incarceration than an offender who posts bail; such a result violates principles of equity, which are relevant to the award of credit. *Martin.* The Court opined that "an indigent offender, unable to furnish bail, should serve no more and no less time in confinement than an otherwise identically situated offender who succeeds in furnishing bail." *Id.* at 598, 840 A.2d at 304. Thus, the Supreme Court concluded that the posting of "bail is not determinative as to whether the offender receives credit for time served." *Id.* at 605–606, 840 A.2d at 309. Applying the equitable principles of allocation to Martin's situation, the Supreme Court concluded that he was entitled to credit toward his original sentence for the remainder of his pre-custody time served. *Id.*

This Court has subsequently applied the *Martin* rule whenever the parolee's new sentence was *less than* the time spent in custody awaiting trial on the new charges. *See, e.g., Hears* (petitioner's new sentence of four days was less than the pre-sentence

custody time of four months, 20 days); *Jones v. Pennsylvania Board of Probation and Parole,* 872 A.2d 1283 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 586 Pa. 731, 890 A.2d 1061 (2005). In *Melhorn v. Pennsylvania Board of Probation and Parole,* 883 A.2d 1123 (Pa. Cmwlth.2005), this Court considered the application of *Martin* to a case where the parolee's new sentence was *greater than* his pre-sentence time in confinement. In *Melhorn,* the parolee, Barry Melhorn, was confined for five months, ten days, because of a Board detainer and new criminal charges on which he did not post bail. Melhorn pled guilty and was sentenced to a term of no less than six months and no more than twenty three and a half months, which exceeded his pre-sentence confinement. *Melhorn.* The trial court did not credit Melhorn's pre-sentence custody to the new sentence. Upon recommitting Melhorn as a parole violator and recalculating his maximum expiration date, the Board did not credit Melhorn's pre-sentence custody to his original sentence. Melhorn sought administrative relief from the Board's decision and, when it was denied, petitioned this Court for review of that decision. This Court held that, because the award of credit is equitable in nature, Melhorn should receive credit on his original sentence for his pre-sentence confinement. *Melhorn,* 883 A.2d at 1127 (quoting *Martin,* 576 Pa. at 604, 840 A.2d at 308). Upon determining that Melhorn should not have been denied credit towards his original sentence when the sentencing court failed to credit his time served awaiting disposition on the new charges, we reversed and directed the Board to credit Melhorn's pre-sentence confinement time against his original sentence as requested. *Melhorn.* On appeal, however, the Supreme Court reversed our decision citing *McCray v. Department of Corrections,* 582 Pa. 440, 872 A.2d 1127

(2005), *Gaito*, and Section 9760 of the Sentencing Code, 42 Pa.C.S. § 9760,[4] without further elaboration. *Melhorn v. Pennsylvania Board of Probation and Parole*, 589 Pa. 250, 908 A.2d 266 (2006).

■ In *McCray*, the Supreme Court made it clear that issues regarding the proper allocation of credit on a new sentence must be addressed by the sentencing court, or the Superior Court on appeal. In *McCray*, an inmate petitioned for writ of mandamus, seeking to compel reversal of the order of the Department of Corrections denying him credit for time served. The Supreme Court stated that it is the duty of the Department of Corrections to credit inmates for all statutorily mandated periods of incarceration, but it must be done pursuant to the trial court's sentencing orders. *McCray*. The Department "is charged with faithfully implementing sentences imposed by the courts" and "lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions." *Id.*, 582 Pa. at 450, 872 A.2d at 1133. If a trial court does not give an inmate full credit for time served, the Department of Corrections has no duty to give an inmate full credit for time served. *McCray*. The inmate's remedy is in the

trial court and through the direct appeal process. *Id.*

■ Based upon the Supreme Court's decision in *Melhorn* and our careful consideration of the cases cited therein, we believe that *Martin* is limited to the allocation of excess pre-sentence confinement credit. In other words, where a parole violator is confined on both the Board's warrant and the new criminal charges and it is not possible to award all of the credit on the new sentence because the period of pre-sentence incarceration *exceeds* the maximum term of the new sentence, the credit must be applied to the offender's original sentence.

Contrary to Armbruster's contention, our Supreme Court's decision in *Martin* does not compel a different result here.[5] In fact, we find *Melhorn* to be directly on point. Armbruster, having failed to post bail, was incarcerated on the new criminal charges and the Board's warrant from January 13, 2005 to September 20, 2005 (250 days). Armbruster was ultimately sentenced to eight to twenty-four months on the new criminal charges. Significantly, Armbruster's new sentence exceeds his pre-sentence confinement.[6] As a result,

**4.** Section 9760(1) of the Sentencing Code requires the sentencing court to give credit "against the maximum term and any minimum term ... for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based."

**5.** In support of his position, Armbruster also cites this Court's opinion in *Melhorn*, which as set forth above was reversed by the Supreme Court, and *Kelly v. Pennsylvania Board of Probation and Parole*, 900 A.2d 476 (Pa. Cmwlth.), *petition for allowance of appeal granted*, —— Pa. ——, 916 A.2d 634 (2006), which heavily relies upon our overturned opinion in *Melhorn*.

Armbruster also cites *Jones*. However, *Jones* is distinguishable from the matter at

hand because the new sentence imposed did not exceed the period of pre-sentence incarceration. Jones was held in custody for a period of four months and seventeen days before sentencing. *Jones*, 872 A.2d at 1285. Jones was sentenced to forty-eight hours to twelve months on the new charge. *Id.* Jones was paroled on the new sentence after forty-eight hours to begin serving backtime. *Id.* Jones' pre-sentence confinement time was applied to the new sentence. Id. As a result, Jones was entitled to have the excess pre-sentence confinement time applied to his original sentence in accord with *Martin*. *Id.*

**6.** While Armbruster's minimum sentence of eight months does not exceed the pre-sentence custody time (243 days), his maximum sentence of twenty-four months does. *See Melhorn*.

there is no "excess" pre-sentence confinement time to apply to Armbruster's original sentence.

 Armbruster's sole basis for requesting credit from the Board is that he was not given credit on his new sentence. Pursuant to *Melhorn* and *McCray,* where a sentencing court does not give an inmate full credit for time served, the inmate's remedy is in the trial court and through the direct appeal process, not through the Board.

Under the facts presented here, we conclude that the Board properly refused to apply Armbruster's pre-sentence confinement time towards his original sentence. Having determined that Armbruster is not entitled to credit on his original sentence for the period of incarceration from January 13, 2005 to September 20, 2005, there is no basis upon which to conclude that he is entitled to parole review earlier than July 2007.

Accordingly, the Board's motion for remand is granted and the order of the Board is affirmed in all other respects.

### ORDER

AND NOW, this 13th day of March, 2007, the Board of Probation and Parole's motion for remand is granted to correct a clerical error; the Board's decision, at Parole No. 9379–P, dated May 5, 2006, is affirmed in all other respects.

Jurisdiction is relinquished.