IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Malik Omar Grasty, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 893 C.D. 2023 |
| | : | |
| Pennsylvania Parole Board, | : | |
| Respondent | : | Submitted: October 8, 2024 |

BEFORE:   HONORABLE ELLEN CEISLER, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                                        FILED:  December 4, 2024

Malik Omar Grasty petitions for review of the July 14, 2023 Order of the Pennsylvania Parole Board (Board) denying his administrative appeal from the Board's October 13, 2022 decision that recommitted him as a convicted parole violator (CPV) and recalculated his maximum sentence date to November 8, 2025. We affirm.

## **Background**

Mr. Grasty is presently an inmate at the State Correctional Institution at Camp Hill (SCI-Camp Hill).  The maximum date for Mr. Grasty's original criminal sentence was November 15,  2019.  Certified Record (C.R.) at 1-3.

On October 18, 2016, Mr. Grasty was released from Quehanna Boot Camp to an approved home plan.  *Id.* at 4.  Before his release, Mr. Grasty signed a document titled "Conditions Governing Parole," which stated:  "If you are convicted of a crime committed while on parole, the Board has the authority, after an appropriate hearing,

to recommit you to serve the balance of the sentence or sentences which you were serving when paroled, with no credit for time at liberty on parole." *Id.* at 8.

On August 23, 2017, while on parole, Mr. Grasty was arrested and charged with multiple criminal offenses in Chester County. *Id.* at 23. The Board lodged its warrant to commit and detain Mr. Grasty pending disposition of the new criminal charges on August 23, 2017. *Id.* at 9.

On September 27, 2017, Mr. Grasty was arrested and charged with additional criminal offenses in Chester County. On November 8, 2017, Mr. Grasty was again arrested and charged with additional criminal offenses in Chester County.

Mr. Grasty initially pled guilty to various criminal charges in his three Chester County cases on March 2, 2018, and was sentenced to state incarceration. As a result of the new convictions, on September 19, 2018, the Board recommitted Mr. Grasty to SCI-Camp Hill as a CPV to serve 36 months' backtime. C.R. at 11-12. However, on October 22, 2019, the Board rescinded its prior recommitment order because Mr. Grasty's sentence was vacated following a Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, proceeding. *Id.* at 13.

On November 4, 2019, the Board lifted its warrant to commit and detain Mr. Grasty at the expiration of his original sentence maximum date, effective November 15, 2019. *Id.* at 15-16. Mr. Grasty subsequently posted bail in his three Chester County cases on March 6, 2020. *Id.* at 86, 133, and 178.

On August 3, 2022, Mr. Grasty entered new guilty pleas in his three Chester County cases and was sentenced to an aggregate term of 8 to 20 years' incarceration. He subsequently waived his rights to a parole revocation hearing and to representation by counsel. *Id.* at 20-22, 65.

On October 13, 2022, the Board recommitted Mr. Grasty as a CPV to serve 30 months' backtime for his new Chester County offenses, with no credit for time

2

spent at liberty on parole. C.R. at 212. The Board explained that it did not award credit for the time Mr. Grasty spent at liberty on parole because (1) he was convicted of a new offense that was the same or similar to the original offense, and (2) he committed a new offense involving the possession of a weapon. *Id.* at 213. Due to his recommitment as a CPV, Mr. Grasty's maximum sentence date was extended from November 15, 2019, to November 8, 2025. *Id.*

On November 16, 2022, Mr. Grasty filed a Petition for Administrative Review with the Board, asserting that (1) the Board should have awarded him credit for time spent at liberty on parole, and (2) the Board erred in recalculating his maximum sentence date. *Id.* at 215.

On July 14, 2023, the Board denied Mr. Grasty's administrative appeal and affirmed its October 13, 2022 Order recommitting him as a CPV. The Board concluded:

> To address your recalculated maximum date, the record reveals that on October 18, 2016, you were released from Quehanna Boot Camp with a maximum date on your original sentence of November 15, 2019. *This means that you were left with 1,123 days to serve on your original sentence the day you were released. Considering the Board denied you credit for the time spent at liberty on parole based on your recommitment as a CPV, this means you owed 1,123 days on your original sentence based on the recommitment.* [Section 6138(a)(2) of the Prisons and Parole Code (Parole Code),] 61 Pa. C.S. § 6138(a)(2).[1] You were provided no pre-sentence credit on your original sentence because *neither the Board*[] *nor the Department of Corrections held*

---

[1] Section 6138(a)(2) of the Parole Code provides:

If the offender's parole is revoked, the offender *shall be recommitted to serve the remainder of the term which the offender would have been compelled to serve* had the parole not been granted and, except as provided under paragraph (2.1), *shall be given no credit for the time at liberty on parole*.

61 Pa. C.S. § 6138(a)(2) (emphasis added).

3

*you solely on its detainer prior to sentencing in Chester County on August 3, 2022*[,] when you were sentenced to state incarceration. *Gaito v. Pa. B*[*d.*] *of Prob*[.] *and Parole*, 412 A.2d 568 (Pa. 1980). Thus, *you still owed 1,123 days on your original sentence.* Because you were sentenced to state incarceration, the . . . Parole Code[] provides that you must serve the balance of your original sentence first. [Section 6138(a)(5) of the Parole Code,] 61 Pa. C.S. § 6138(a)(5).[2] However, that provision does not take effect until the Board revoked your parole. *Campbell v. Pa. B*[*d.*] *of Prob*[.] *and Parole*, 409 A.2d 980 (Pa. 1980). *This means that you became available to commence service of your original sentence on October 12, 2022, because that is the day the Board obtained enough signatures to declare you a parole violator. Adding 1,123 days to October 12, 2022 yields a recalculated maximum date of November 8, 2025.* Thus, the Board properly recalculated your maximum date.

C.R. at 217-18 (emphasis added). Mr. Grasty now petitions for review of that decision.[3]

## Analysis

On appeal, Mr. Grasty asserts that the Board erred in recalculating his maximum sentence date from November 15, 2019, to November 8, 2025.[4]

---

[2] Section 6138(a)(5)(i) provides: "If a new sentence is imposed on the offender, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term . . . [i]f a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution." 61 Pa. C.S. § 6138(a)(5)(i).

[3] In cases involving the Board's denial of a parolee's request for administrative relief, our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether the parolee's constitutional rights were violated. *McNally v. Pa. Bd. of Prob. & Parole*, 940 A.2d 1289, 1292 (Pa. Cmwlth. 2008); *see* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] Before this Court, Mr. Grasty does not challenge the Board's decision to deny him credit for the time he spent at liberty on parole, so we will not review that aspect of the Board's decision. *See* Am. Pet. for Rev. ¶ 8; *see also* Grasty Br. at 7 (stating that his Amended Petition for Review "specifically concern[s] his amount of time credit for the period spent incarcerated solely on the Board's detainer").

Specifically, Mr. Grasty contends that he was entitled to presentence credit of 582 days on his original sentence because he was held solely on the Board's detainer from April 12, 2018, through November 14, 2019. Mr. Grasty asserts:

> According to a monthly account statement for [Mr. Grasty] from the Integrated Offender Case Management System, [Mr. Grasty] was incarcerated at SCI[]-[]Camp Hill while awaiting trial on his Chester County criminal charges. These documents show that [he] was at SCI[]-[]Camp Hill from April 12, 2018, to November 14, 2019. When reviewing [his] sentencing sheet from Chester County, [Mr. Grasty] did not receive time credit for that period. *It can be assumed that* [*he*] *remained incarcerated as a result of the Board's detainer, and the Board's detainer alone, during this time period.*

Grasty Br. at 9 (footnotes omitted) (emphasis added). Mr. Grasty also asserts that "[i]f it is able to be determined that [he] would have satisfied his bail conditions while awaiting his Chester County sentence and was only detained by the Board, this period of time must be recalculated against his original sentence." *Id.* at 12. Thus, Mr. Grasty contends that "only 541 days should remain on his original sentence," *not* 1,123 days, and that "541 days from October 12, 2022, when [he] was recommitted as a [CPV], should make his maximum date be closer to April 2024." *Id.* at 13. We disagree.

We begin our analysis by reviewing the law governing the calculation of credit for presentence confinement. "[W]here an offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence." *Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 309 (Pa. 2003); *see Gaito*, 412 A.2d at 571. "[W]here a parolee arrested on new criminal charges fails to post bail on those charges[,] any time spent in custody prior to sentencing on those charges is properly credited against the parolee's new sentence." *Woodard v. Pa. Bd. of Prob. & Parole*, 582

A.2d 1144, 1147 (Pa. Cmwlth. 1990) (citing *Gaito*, 412 A.2d at 571); *see also Armbruster v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348, 352 (Pa. Cmwlth. 2007) ("[T]his Court [has] consistently held that once a parolee is sentenced on a new criminal offense, the period of time between arrest and sentencing, when bail is not satisfied [on the new criminal charge], must be applied toward the *new sentence, and not to the original sentence*.") (emphasis added). A parolee does not become available to serve his original sentence until the Board recommits him. *White v. Pa. Parole Bd.*, 276 A.3d 1247, 1253 (Pa. Cmwlth. 2022). Furthermore, "credit for time a [CPV] spends in custody between imposition of a new sentence and revocation of parole must be applied to the new sentence." *Williams v. Pa. Bd. of Prob. & Parole*, 654 A.2d 235, 237 (Pa. Cmwlth. 1995).

Here, the record establishes that when Mr. Grasty was released from boot camp on parole on October 18, 2016, his original sentence maximum date was November 15, 2019. C.R. at 4. Therefore, at that time, Mr. Grasty still owed 1,123 days on his original sentence (i.e., the period from October 18, 2016, through November 15, 2019). *See id.* at 217-18.

While on parole from his original sentence, Mr. Grasty committed multiple offenses that resulted in his recommitment as a CPV. The Board lodged its detainer against Mr. Grasty on August 23, 2017, and he was detained in lieu of bail for new criminal charges in Chester County on August 23, 2017, September 27, 2017, and November 8, 2017. The Board warrant was lifted on November 15, 2019, when Grasty reached his original sentence maximum sentence date. However, Mr. Grasty remained incarcerated on the new Chester County charges until he posted bail on March 6, 2020. On August 3, 2022, Mr. Grasty pled guilty and was sentenced in the three Chester County cases, resulting in an aggregate term of 8 to 20 years' incarceration on the new convictions.

6

In his appellate brief, Mr. Grasty asserts that "[i]f [he] would have been able to satisfy his bail conditions, only 541 days should remain on his original sentence." Grasty Br. at 13; *see id.* at 12 ("If it is able to be determined that [Mr. Grasty] would have satisfied his bail conditions while awaiting his Chester County sentence and was only detained by the Board, this period of time must be recalculated against his original sentence."). However, Mr. Grasty did not satisfy his bail conditions during the period in question – April 12, 2018, through November 14, 2019. The record shows that he did not post bail on the new Chester County charges until March 6, 2020. C.R. at 86, 133, and 178. Mr. Grasty is not entitled to credit toward his original sentence for the period from April 12, 2018, through November 14, 2019, because he was not incarcerated exclusively on the Board's detainer during that time; he was also incarcerated on new criminal charges for which he did not post bail. *See White*, 276 A.3d at 1256 ("[W]hen bail is not posted, the time incarcerated on both the new criminal charges and the Board's detainer must apply to the new sentence."). Under our case law, when an individual is held in custody on both the Board's detainer *and* new criminal charges, any credit for that time period *must* be applied toward *the sentence imposed on the new charges*. *See Gaito*, 412 A.2d at 571. Therefore, the credit for the period Mr. Grasty was incarcerated from April 12, 2018, through November 14, 2019, must be applied to his new sentence. *See Williams*, 654 A.2d at 237. Under the facts presented here, we conclude that the Board properly refused to apply credit for the period from April 12, 2018, through November 14, 2019, toward Mr. Grasty's original sentence.[5]

---

[5] In his appellate brief, Mr. Grasty also appears to challenge the sentencing court's imposition of credit toward his new Chester County sentences, arguing that, based on the sentencing orders, he did not receive credit on the new sentences for the period from April 12, 2018, through November 14, 2019, so he should receive that credit toward his original sentence. *See* Grasty Br. at 8-9; C.R. at 31. However, this Court has held that "where a sentencing court **(Footnote continued on next page…)**

Furthermore, the Board did not revoke Mr. Grasty's parole until it obtained the necessary signatures on October 12, 2022; thus, Mr. Grasty was not available to begin serving the balance of his original sentence until October 12, 2022. C.R. at 218; *see Armbruster*, 919 A.2d at 351 ("Upon recommitment as a [CPV], the parolee must serve the remainder of the term which he would have been compelled to serve had he not been paroled."). As the Board correctly determined, "[a]dding 1,123 days to October 12, 2022 yields a recalculated maximum date of November 8, 2025." C.R. at 218.

## Conclusion

Accordingly, because we conclude that the Board neither erred nor abused its discretion in recalculating Mr. Grasty's maximum sentence date, we affirm the Board's Order.

 

ELLEN CEISLER, Judge

---

does not give an inmate full credit for time served, the inmate's remedy is in the trial court and through the direct appeal process, not through the Board." *Armbruster*, 919 A.2d. at 356.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Malik Omar Grasty,                           :
                          Petitioner         :
                                             :
        v.                                   :   No. 893 C.D. 2023
                                             :
Pennsylvania Parole Board,                   :
                          Respondent         :

# **O R D E R**

AND NOW, this 4th day of December, 2024, the July 14, 2023 Order of the Pennsylvania Parole Board is hereby AFFIRMED.

_____

ELLEN CEISLER, Judge