**John C. KOEHLER, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 14, 2007.

Decided Oct. 25, 2007.

John C. Koehler, petitioner, pro se.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

## OPINION

PER CURIAM.

John C. Koehler (Koehler), *pro se*, petitions for review from an order of the Pennsylvania Board of Probation and Parole (Board) that recommitted him as a technical and convicted parole violator and recalculated his parole violation maximum date to May 6, 2012.

On December 6, 1990, Koehler was sentenced to a term of 9–20 years for robbery and criminal conspiracy. He was incarcerated at the State Correctional Institution at Mercer. Sentence Status Summary at 1; Certified Record (C.R.) at 1. On April 27, 1998, Koehler was paroled. Order to Release on Parole at 1; C.R. at 6.

By decision dated April 12, 2001, Koehler was recommitted to State Correction Institution—Cresson (SCI–Cresson) as a technical parole violator for violating a condition of parole not to have contact with minor females. C.R. at 9. On October 10, 2002, Koehler was again released on parole. C.R. at 10.

On August 15, 2003, Board agents arrested Koehler for technical violations (possession of alcohol and association with minor females) and returned him to the State Correctional Institutional at Albion (SCI–Albion).

On January 2, 2004, while being detained by the Board at SCI–Albion, Erie Police arrested Koehler and charged him with 19 counts of Sexual Abuse of Children/Possession of Child Pornography, 18 Pa.C.S. § 6312(d).[1] Criminal Arrest and Disposition Report (# 2) at 1; C.R. at 17. Bail was set at $75,000, which he never posted. C.R. at 20.

By decision mailed January 21, 2004, the Board recommitted Koehler to SCI–Cresson as a technical parole violator to serve 18 months back time. C.R. at 16.

On October 26, 2004, Koehler was moved on a writ from SCI–Cresson to Erie County for a trial on his new criminal charges. While Koehler was incarcerated at Erie County Prison, he was re-arrested on July 12, 2005, and charged with attempted escape, possession of prohibited offensive weapons and implements of escape. C.R. at 441–42.[2]

---

1. On August 15, 2003, in connection with Koehler's association with two juvenile runaways, Koehler's supervising parole agent, Agent Wehrle, went to Koehler's residence, searched his room and computer and found pictures of young children engaged in various sexual acts. Agent Wehrle also seized from Koehler's residence a book about how to come up with a new identity, a book about making a silencer for a gun, Mastercard bills, and a black nylon holster.

2. According to the new Criminal Arrest and Disposition Report (# 3), Koehler made a weapon from pieces of a paint roller and told a fellow inmate that he planned to stab a correctional officer; he also told an inmate that he planned on using a bobby pin to pick the lock on his handcuffs on the way to his trial, grab a deputy's gun, exit the van, and hijack another vehicle at gunpoint. Criminal

On July 19, 2005, after a four-day jury trial, Koehler was found guilty on 14 counts of Sexual Abuse of Children/Possession of Child Pornography and bail was revoked. On November 1, 2005, Koehler was sentenced to serve a new aggregated 28-year term in a State prison. Order of Sentence at 1–2; C.R. at 71–72.

In the meantime, Koehler remained at Erie County Prison pending disposition of the new weapons and attempted escape charges. On December 22, 2005, the weapons and attempted escape charges were *nolle-prossed* due to lack of evidence. *See* Criminal Docket, CP–25–CR–0002843–2005 at C.R. at 42.

On January 4, 2006, Koehler was moved from Erie County Prison back to SCI–Cresson. On January 6, 2006, Koehler waived his right to a Parole Revocation Hearing before a panel.

On January 31, 2006, a Parole Revocation Hearing was held at SCI–Cresson before a Hearing Examiner. At the hearing, Koehler's counsel presented a motion to dismiss pursuant to 37 Pa.Code § 71.4 on the grounds that the date of the hearing was beyond the 120 days allowed.[3] Koehler's counsel argued that the Revocation Hearing was untimely because it was not held within 120 days from the date the

parole agent had notice of his July 19, 2005, guilty verdicts which, according to the "Notice of Charges and Hearings," was on July 22, 2005. Revocation Hearing Transcript, January 31, 2006 (H.T.), at 7–8; C.R. at 55–57.

The Commonwealth's witness, Agent Mike Boslett (Agent Boslett), testified that the official "verification date" was December 28, 2005, not July 22, 2005. Koehler's Criminal Arrest and Disposition Report # 2 signed by Koehler's supervising parole agent, reporting a verification date of December 28, 2005, was admitted into the record. Agent Boslett explained that Koehler was "ATA" (meaning authorized temporary absence) for a time and, therefore, unavailable to the Board. H.T. at 10–11; C.R. at 58–59. Agent Boslett also offered into evidence, without objection, a "Moves Report" which showed Koehler was in the Erie County Prison from October 26, 2004, until his return to SCI–Cresson on January 4, 2006. H.T. at 12; C.R. at 60.

The Hearing Examiner denied Koehler's motion to dismiss.

### Board's May 5, 2006 Combined Revocation Decision and Recalculation Order

By combined revocation decision and recalculation order mailed May 5, 2006, the

---

Arrest and Disposition Report at 1; C.R. at 41.

**3.** 37 Pa.Code § 71.4 requires that before a parolee may be recommitted as a convicted violator the following procedures must be followed:

(1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:

(i) if a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution

or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional institution.

(ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

Board recommitted Koehler as a technical and convicted parole violator and announced a recalculated maximum term expiry of September 13, 2012, for his original 20–year State prison sentence. C.R. at 97–98.

## Koehler's First Petition for Administrative Review

Koehler, *pro se*, filed a petition for administrative review on May 15, 2006, and alleged that the Board (1) failed to provide him with a timely revocation hearing, and (2) erred in recalculating his parole maximum date. Supplemental Certified Record (S.C.R.) at 1–5.

## Board's July 7th Modified Recalculation Order

Koehler successfully convinced the Board that it had erred in calculating his parole maximum date.

By modified recalculation order dated July 6, 2006 and mailed July 7, 2006, the Board announced a recalculated maximum expiry for Koehler's original 20–year State prison sentence. The Board readjusted the parole maximum date from September 23, 2012, to May 6, 2012. C.R. at 99–102. The change reflected that Koehler received 140 days of back time credit for the period he was incarcerated at SCI–Albion from August 15, 2003, to January 2, 2004 (when he was arrested by Erie County police and moved to Erie County prison), and that Kohler became available to serve his back time on November 1, 2005, when he was sentenced on the new convictions. Despite Koehler's urging, the modified recalculation order did not credit Koehler's sentence with the 669 days from January 2, 2004, to November 1, 2005, when he was confined in Erie County Prison.

## The Board's July 19th Response to Koehler's First Petition for Administrative Review

On July 19, 2006, the Board affirmed its May 5, 2006, Combined Revocation Decision and Recalculation Order, as amended by the decision mailed July 7, 2006.

The Board explained that Koehler received 140 days of backtime credit for the period he was incarcerated from August 15, 2003, to January 2, 2004. The Board still did not credit him for the 669 days from January 2, 2004, to November 1, 2005, during which he was confined at Erie County Prison.

As to the timeliness of the revocation hearing, the Board specifically concluded that "*the revocation hearing was held within 120 days of the date the Board received official verification of your conviction and return to a state correctional institution. Therefore, the hearing was timely pursuant to 37* Pa.Code § 74.1." Board's Decision, July 19, 2006, at 1 (Emphasis added).

## Koehler's Second Petition for Administrative Review

Koehler, *pro se*, filed a second petition for administrative review of the modified recalculation order mailed July 7, 2006. Koehler again raised the issue of the timeliness of the Revocation Hearing before the Board.

He also asserted that the Board's failed to credit him for the 669 days from January 2, 2004, to November 1, 2005 he spent "in custody for the original 9–20 year sentence" at the Erie County Prison. He attributed the error to the Board's "apparent ... erroneous belief that said 22 months was pretrial confinement time and should be credited towards service on the new sentence." Petition for Administrative Review, July 14, 2006, at 5–6; C.R. at 110–111.

*Koehler's July 24, 2006, Petition for
Review in Commonwealth
Court*

While his petition for review was pending before the Board, Koehler filed a petition for review in this Court on July 24, 2006, from the Board's July 19, 2006, order. *John C. Koehler v. Pennsylvania Board of Probation and Parole*, 1421 C.D. 2006 (Commonwealth Court, filed January 26, 2007). Koehler asserted that the Board erred in its recalculation of his parole violation maximum date and that his Revocation Hearing was untimely.

The Board sought a remand because of Koehler's pending petition for administrative relief before the Board.

This Court concluded that Koehler's appeal to the Commonwealth Court was not from a final order with respect to the recalculation issue. Because this Court did not have jurisdiction to entertain Koehler's appeal it was quashed. Commonwealth Court Order dated January 26, 2007. Because this Court lacked jurisdiction, it did not address Koehler's challenge to the timeliness of the Revocation Hearing. Commonwealth Court Memorandum Opinion, January 26, 2007, at 8, footnote 11.

*The Board's January 30, 2007 Decision*

Four days later, on January 30, 2007, the Board denied Koehler's *pro se* petition for administrative relief and notified him of the decision in a letter dated January 30, 1997:

> When you were paroled on October 10, 2002, your max date was December 14, 2007, which left 1891 days remaining on your sentence. As a convicted parole violator, you automatically forfeit credit

for all of the time that you spent on parole. 61 P.S. § 331.21a(a). This means that you still had 1891 days remaining on your sentence. You also forfeited credit for the 627 days you were previously on parole from April 27, 1998, to January 14, 2000. *Houser v. Pennsylvania Board of Probation and Parole*, 682 A.2d 1365 (Pa.Cmwlth.1996). Adding this to the time you had remaining results in a total of 2518 days remaining on your sentence. However, you received 140 days of backtime credit for the period you were incarcerated from August 15, 2003, to January 2, 2004. Subtracting this credit from the time you had remaining results in a total of 2378 days remaining on your sentence. You became available to begin serving your backtime on November 1, 2005, when you were sentenced on the new convictions. Adding 2378 days to that date yields a new parole violation maximum date of May 6, 2012.

> Additionally, please note that you cannot use the modified recalculation decision mailed July 7, 2006, to reargue the revocation decision mailed May 5, 2006 was improper. *Woodard v. Pennsylvania Board of Probation and Parole*, 136 Pa.Cmwlth. 257, 582 A.2d 1144 (1990); *Wright v. Pennsylvania Board of Probation and Parole*, 743 A.2d 1004 (Pa. Cmwlth.1999).

> Accordingly, the Board decision mailed July 7, 2006 is AFFIRMED.

Board Decision, January 30, 2007 at 1.

*Koehler's Appeal*

 Koehler filed a petition for review in this Court on February 12, 2007.[4] He raises three issues: (1) whether the

---

4. This Court's scope of review of a Board decision is limited to determining whether constitutional rights were violated, an error of law was committed, or findings of fact are supported by substantial evidence. *Carter v. Pennsylvania Board of Probation and Parole*, 117 Pa.Cmwlth. 635, 544 A.2d 107 (1988).

Board's determination that he received a timely Revocation Hearing is supported by substantial evidence; (2) whether the Board's decision to recommit him as a convicted parole violator should be set aside as violative of due process and Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–704; and (3) whether the Board erred as a matter of law when it recalculated his maximum date by failing to credit him for the 669 days he spent in custody at the Erie County Prison from January 2, 2004, to November 1, 2005?

## I.

### Timeliness of the Revocation Hearing Issue

Koehler initially contends that the Board failed to prove by substantial evidence that it provided him with a timely revocation hearing as required by 37 Pa. Code § 71.4.

■ His argument is twofold. First, he claims that the Hearing Examiner's finding that "official verification" of his new conviction was received by his supervising parole agent, Agent Wehrle, on December 28, 2005, was not supported by substantial evidence. He asserts that the Hearing Examiner's finding that he was "unavailable" for a Revocation Hearing until he was returned to SCI–Cresson on January 4, 2006, was likewise not supported in the record.

The Board counters that the Revocation Hearing was timely because it was held within 120 days of the date Koehler's parole agent received "official verification" of Koehler's guilty verdicts. 37 Pa.Code § 71.4(1). Specifically, the Criminal Arrest and Disposition Report # 2, admitted without objection at the Revocation Hearing, established an "official verification" date of December 28, 2005. The Revocation Hearing was held 34 days later on January 31, 2006, well within the 120–day period. The Board contends that, in any event, the exception to the 120–day rule, set forth at 37 Pa.Code § 71.4(1)(i), applies here because Koehler was "outside the jurisdiction" of the Department of Corrections in a county correctional institution until he was returned on January 4, 2006, at which time the 120 days began to run.

■ Where a parolee asserts that the Board held a revocation hearing beyond the 120–day period, the Board bears the burden of proving, by a preponderance of the evidence, that the hearing was timely. *Taylor v. Pennsylvania Board of Probation and Parole,* 154 Pa.Cmwlth. 462, 624 A.2d 225 (1993).

■ The test for determining the timeliness of a revocation hearing held before the Board is whether, after subtracting the periods of time not chargeable to the Board, the remaining time exceeds 120 days from either the parole preliminary hearing or the official verification of the new conviction or of the offender's return to a state correctional institution. 37 Pa. Code § 71.4(a); *Africa v. Pennsylvania Board of Probation and Parole,* 124 Pa. Cmwlth. 425, 556 A.2d 506 (1989); *Major v. Pennsylvania Board of Probation and Parole,* 166 Pa.Cmwlth. 637, 647 A.2d 284 (1994).

■ When determining whether a parolee received a timely parole revocation hearing, periods of delay are excusable if that time is not chargeable to the Board. For example, Board regulations exclude from the timeliness computation periods of time that an offender has been detained in either a Federal or out-of-state correctional institution. 37 Pa.Code § 71.5(c)(4). For offenders facing a revocation hearing based on new criminal conviction, the period of time that an offender is confined to a Pennsylvania county prison does not count

towards the 120 days that the Parole Board has to provide the offender with a revocation hearing. *Copeland v. Pennsylvania Board of Probation and Parole*, 771 A.2d 86, 88 n. 9 (Pa.Cmwlth.2001). However, this Court has held where an offender was only "temporarily" moved from a state correctional institution to a county jail, or "merely detained at the county jail" jurisdiction remained within the Department of Corrections and did not constitute "confinement outside the jurisdiction of the Department of Corrections" for purposes of 37 Pa.Code § 71.4(1)(i). *Montgomery v. Pennsylvania Board of Probation and Parole*, 808 A.2d 999 (Pa.Cmwlth.2002); *Morgan v. Pennsylvania Board of Probation and Parole*, 814 A.2d 300 (Pa.Cmwlth. 2003).

Here, the document introduced by Agent Boslett at the Revocation Hearing, i.e., Criminal Arrest and Disposition Report # 2 (PBPP 257C # 2), indicated that "official verification" of the new Sexual Abuse of Children/Possession of Child Pornography convictions was received by Koehler's supervising parole agent, Agent Wehrle, on **December 28, 2005.** C.R. at 17.[5]

Koehler argues, however, that the Notice of Charges and Hearings Report (PBPP–257N) established that Agent Wehrle actually received verification of the July 19, 2005, guilty verdicts on **July 22, 2005,** *not* **December 28, 2005,** as indicated on "Criminal Arrest and Disposition Report # 2".[6] According to Koehler, because Agent Wehrle *signed* the Notice of Charges and Hearings Reports on **July 22, 2005,** he knew of Koehler's new conviction on or before **July 22, 2005.**

Koehler also claims that because both Criminal Arrest and Disposition Reports # 2 and # 3 indicate that "official verification" was on **December 28, 2005,** one of them was wrong. Koehler asserts that because the Hearing Examiner, did not resolve this conflict, her decision was not supported by substantial evidence. This Court must disagree.

First, during the Revocation Hearing, any discrepancy as to why December 28, 2005, appeared as verification dates on both Criminal Arrest and Disposition Reports # 2 and # 3 was adequately explained by Agent Boslett, whom the Hearing Examiner credited. Agent Boslett testified that both Criminal Arrest and Disposition Reports # 2 and # 3 had official verification dates of December 28, 2005. H.T. at 8–10; C.R. 56–58. Agent Boslett explained that "we verified" the "withdrawal of nolle prosequi of the [third arrest charges] on 12–28, the same date we verified the current sentence or current conviction." H.T. at 10–11; C.R. 58–

---

5. The Board asserts that Koehler waived the issue because he failed to raise it within 30 days from July 19, 2006, the date the Board mailed its final order that affirmed the May 5, 2006, decision. This Court must disagree. Koehler filed his first petition for review in this Court on July 24, 2006, just days after the Board's July 19, 2006, decision affirming its amended May 5, 2006, decision. Upon the Board's urging, this Court quashed Koehler's entire the appeal, which included the recalculation portion of the Board's decision and the Board's comprehensive review of the timeliness of the Revocation Hearing. On February 12, 2007, Koehler filed the instant petition for review in which again raised this issue. Because Kohelher preserved this issue at every stage of these protracted proceedings, the timeliness of his Revocation Hearing was properly preserved.

6. The Notice of Charges and Hearings was sent to Koehler by the Board pursuant to 37 Pa.Code § 71.2(12)(i) to inform him that a parole revocation hearing was scheduled for January 31, 2006, for his July 19, 2005, convictions, and to inform him of his right to counsel.

59.[7] Therefore, the fact that both Criminal Arrest and Disposition Reports had official verification dates of December 28, 2005, was not necessarily the result of an error as Koehler suggests.

Furthermore, even if Agent Wehrle *knew* of Koehler's convictions on July 22, 2005, it does not constitute "official verification" under 37 Pa.Code § 71.4(1). "Official verification" is defined as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa.Code § 61.1.

This Court has held that a parole agent's actual knowledge of an offender's new conviction does not commence the 120-day period prior to the Parole Board's receipt of official verification of that conviction from the court in which the offender was convicted. *Tarrant v. Pennsylvania Board of Probation and Parole*, 521 A.2d 997 (Pa.Cmwlth.1987), *appeal denied*, 517 Pa. 596, 535 A.2d 84 (1987). Therefore, the **July 22, 2005,** date in the Notice of Charges and Hearings suggesting the date of Agent Wehrle's actual *knowledge* is irrelevant. *See also Vanderpool v. Pennsylvania Board of Probation and Parole*, 874 A.2d 1280, 1284–1285 (Pa.Cmwlth. 2005), wherein this Court concluded that a revocation hearing held within 120 days from the receipt of the official verification, but more than 120 days after the Board became aware of the parolee's conviction, was timely.

The record established that Agent Wehrle received official verification of Koehler's convictions of Sexual Abuse of Children/Possession of Child Pornography on December 28, 2005. Because the Revocation Hearing was held well within 34 days of that date, Koehler's right to as speedy revocation hearing was not violated. Accordingly, it is not necessary to address whether Koehler was provided with a timely revocation hearing under the "exceptions" enunciated in 37 Pa.Code § 71.4(1)(i) and (ii) or Koehler's contention that he was "unavailable" for recommitment by the Board until he was returned to SCI–Cresson on January 4, 2006.

## II.

## Whether the Hearing Examiner's Decision Complied With the Administrative Agency Law?

Next, Koehler challenges the Hearing Examiner's denial of his motion to dismiss at the Revocation Hearing because she failed to support her decision with factual findings.

The Board asserts the issue was waived due to Koehler's failure to raise it prior to the instant appeal. This Court has reviewed the record and agrees that Koehler

---

7. Koehler also contends that Agent Boslett did not offer the second Criminal Arrest and Disposition Report into evidence but instead offered the jury verdict slip which did not contain the date it was received by the Board. He states that the Hearing Examiner did not rely on anything "other than certified copies of records proving Koehler's convictions" and the Moves Report. Contrary to Koehler's argument, the transcript reveals that those "certified copies of records" included, in the Hearing Examiner's words, the "following reports" that became "part of the hearing file":

*Criminal arrest and disposition report number two which deals with the contents of State's Exhibit 2. Then criminal arrest and disposition report number three* .... Notice of charges and hearing, the entry of appearance of counsel, waiver of panel hearing, contents of State's Exhibits 1, 2, and 3, orders to release on parole, re-parole and summarization reports. (Emphasis added). Hearing Transcript at 16–17; C.R. at 64–65.

never raised it before this appeal. Accordingly, the issue was waived.

Even assuming Koehler did not waive the issue, this Court would conclude that it was without merit. The reasons stated in the Board's decision for revoking parole were obvious. Koehler's new convictions on the Sexual Abuse of Children/Possession of Child Pornography provided the basis for the Board's revocation of his parole.

■ In any event, as acknowledged by Koehler, this Court in *Corley v. Pennsylvania Board of Probation and Parole,* 83 Pa.Cmwlth. 529, 478 A.2d 146 (1984), concluded that a parole recommitment order is not an adjudication subject to the provisions of Section 507 of the Administrative Agency Law and the Board was, therefore, not required to state factual findings to support its decision.

## III.

*Whether Koehler was Entitled to Credit on his Original Sentence for the 669 Days he was Confined in Erie County Prison from January 2, 2005, to November 1, 2005*

■ Lastly, Koehler asserts that the Board erred as a matter of law in calculating his maximum date because it failed to credit him for the 669 days ("presentence time") he spent in custody at Erie County Prison from January 2, 2004, (date of his arraignment on new criminal charges) through November 1, 2005, (date of his sentencing on new criminal charges)

against his *original* sentence. Koehler asserts that the sentencing court gave him "no credit" for the time spent in custody at Erie County Prison based on its determination that he was already serving parole violation backtime on his original 9–20 year sentence. *See* Reconstructed Sentencing Order, November 1, 2005, at 1; C.R. at 112, noting that Koehler was "serving State [sentence] in on State Parole—no credit."[8]

Based on recent caselaw and developments in the law concerning the allocation of credit for time served awaiting disposition of a new criminal charge this Court is powerless to grant Koehler his requested relief.

In *Melhorn v. Pennsylvania Board of Probation and Parole,* 883 A.2d 1123 (Pa. Cmwlth.2005), *reversed,* 589 Pa. 250, 908 A.2d 266 (2006), the parolee was confined for five months, ten days, *because of a Board detainer and new criminal charges.* He had not posted bail. The parolee pled guilty and was sentenced to a term of no less than six months and no more than twenty three and a half months. As in this case, the parolee's new sentence *exceeded his pre-sentence confinement,* and the trial court did not credit the parolee's presentence custody to his new sentence. Upon recommitting the parolee as a parole violator and recalculating his maximum expiration date, the Board did not credit the parolee's presentence custody to his original sentence. The parolee sought administrative relief that was denied. Thereafter,

---

**8.** Koehler asserts in the alternative that he "was actively serving backtime as a technical parole violator" during this period. Therefore, the Board should have credited this time toward his original sentence. Koehler's Brief at 27. Contrary to Koehler's contention, because he was arrested by Erie County Police on January 2, 2004, and transferred to the Erie County Prison pending disposition of the

new criminal charges, he was not "available" during this period to serve his backtime for the original sentence. *Snyder v. Pennsylvania Board of Probation and Parole,* 701 A.2d 635 (Pa.Cmwlth.1997). Furthermore, Koehler was not entitled to credit towards his *original* sentence because he was not incarcerated solely on the Board's detainer.

the parolee petitioned for review to this Court.

This Court held that because the award of credit is equitable in nature, the parolee should receive credit on his original sentence for presentence confinement. This Court reversed and directed the Board to credit parolee's presentence confinement time against his original sentence as requested.

In a one-sentence order, the Supreme Court reversed, citing *McCray v. Department of Corrections*, 582 Pa. 440, 872 A.2d 1127 (2005), *Gaito v. Pennsylvania Board of Probation and Parole*, 488 Pa. 397, 412 A.2d 568 (1980) and Section 9760 of the Sentencing Code, 42 Pa.C.S. § 9760.[9]

■ In *McCray*, our Supreme Court held that issues concerning the proper allocation of credit on a new sentence must be addressed by the sentencing court, or the Superior Court on appeal. "[The Board] is charged with faithfully implementing sentences imposed by the courts" and *"lacks the power to adjudicate the legality of a sentence or to add or delete sentencing conditions." McCray*, 582 Pa. at 450, 872 A.2d at 1133 (Emphasis added). Under *McCra y*, if a trial court does not give an inmate full credit for time served, the Board has no duty to give an inmate full credit for time served. The inmate's remedy in this situation is in the sentencing court and through the direct appeal process.

Recently, in *Armbruster v. Pennsylvania Board of Probation and Parole*, 919 A.2d 348 (Pa.Cmwlth.2007), this Court applied the Supreme Court's *Melhorn* decision to facts similar to those presented here. In *Armbruster*, the parolee sought review of a Board decision denying his request for administrative relief from a Board order recommitting him as a technical and convicted parole violator and recalculating his parole availability date and maximum expiration date. Having failed to post bail, the parolee was incarcerated on both new criminal charges and the Board's detainer. The parolee was convicted on the new criminal charges and was sentenced to a term of eight to twenty-four months. The trial court's sentencing order did not, however, indicate that the parolee was to receive credit for time served. Armbruster asserted that the Board erred in failing to credit his original sentence with the time he spent in presentence confinement. The Armbruster Court stated:

> [The parolee's] sole basis for requesting credit from the Board is that he was not given credit on his new sentence. *Pursuant to Melhorn and McCray, where a sentencing court does not give an inmate full credit for time served, the inmate's remedy is in the trial court and through the direct appeal process, not through the Board.*

> Under the facts presented here, we conclude that the Board properly refused to apply [the parolee's] pre-sentence confinement time towards his original sentence

*Armbruster*, 919 A.2d at 356 (Emphasis added).

Here, like the parolee in *Armbruster*, Koehler was incarcerated at Erie County

---

9. Section 9760 of the Sentencing Code provides in pertinent part:

**Credit for Time Served.**

(1) Credit against the maximum and any minimum term shall be given to a defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending resolution of an appeal.

42 Pa.C.S. § 9760.

Prison on the new criminal charges and the Board's parole violation warrant. Contrary to Koehler's contention, he was not incarcerated solely on the Board's warrant during the period in question.[10] He was in official detention before sentencing because of the new criminal charges on which he did not post bail for 669 days from January 2, 2004, to November 1, 2005. If Koehler was entitled to any credit, he was entitled to credit against his new sentence. Accordingly, Koehler's remedy was in the trial court and through the direct appeal process.

The Board properly refused to apply Koehler's presentence confinement time towards his original sentence. See also *Bowman v. Pennsylvania Board of Probation and Parole*, 930 A.2d 599 (Pa.Cmwlth. 2007) ("petitioner's oversight in failing to seek credit on his new federal sentence for his time in custody cannot and should not be rewarded").

The Board is affirmed.

### ORDER

AND NOW, this 25th day of October, 2007, the order of the Pennsylvania Board of Probation and Parole in the above-captioned case is hereby affirmed.

---

**10.** The 140 days Koehler was incarcerated from August 3, 2003, to January 2, 2004, solely on the Board's warrant was credited to his original sentence and is not disputed here.