IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Duzicky,                     :
           Petitioner        :
                           :    No.  945 C.D. 2021
      v.                  :
                           :    Submitted:  February 11, 2022
Pennsylvania Parole Board,    :
           Respondent    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: June 14, 2022

John Duzicky (Duzicky) petitions for review of the order of the Pennsylvania Parole Board (Board), mailed on July 28, 2021, which determined that he was afforded a timely revocation hearing, that he was properly denied time spent at liberty on parole, and that his maximum sentence date was properly recalculated. Upon review, we affirm the Board's decision.

**Background**

The issues regarding Duzicky's parole stem from his 2011 guilty plea in Beaver County to four counts of the manufacture, sale, or delivery, or possession with intent to deliver a controlled substance (PWID), two counts of criminal attempt – PWID, one count of corrupt organizations, and one count of conspiracy to commit

corrupt organizations. (Certified Record (C.R.) at 1-4.) At the time of sentencing, Duzicky's minimum sentence date was April 24, 2017, and his maximum sentence date was April 24, 2023. (C.R. at 2, 4.) Duzicky was paroled and released to an approved home plan on April 24, 2017. (C.R. at 9-10.)

On March 14, 2019, the Pittsburgh Police Department arrested Duzicky and charged him with possession of a controlled substance (cocaine) by a person not registered and PWID. (C.R. at 16, 21-25, 65-70.) On March 15, 2019, the Board lodged a detainer against Duzicky, and, on the same day, Duzicky was confined at the Allegheny County Jail. (C.R. at 15, 17.) Bail was set at $40,000, which Duzicky did not post. (C.R. at 19, 54.)

The Board issued a Notice of Charges and Hearing on April 3, 2019, indicating that a detention hearing was scheduled for April 9, 2019. (C.R. at 25.) Following the hearing, at which Duzicky was represented by a public defender, the Board issued an order (recorded on May 23, 2019) detaining Duzicky pending disposition of the new criminal charges. (C.R. at 34.)

On February 6, 2020, Duzicky pled guilty before the Allegheny County Court of Common Pleas (trial court) to one count of possession of a controlled substance by a person not registered and one count of PWID. (C.R. at 55.) The Board received official verification of Duzicky's new conviction on February 10, 2020.[1] (C.R. at 38, 42.) Duzicky's sentencing was originally scheduled to be held on May 11, 2020, but was subsequently continued,[2] by Allegheny County Court Administration, to September 16, 2020, presumably due to the then-recent onset of the COVID-19

---

[1] According to Duzicky's Criminal Arrest and Disposition Report and Supervision History, a unit supervisor and deputy district director concurred with pursuing a revocation hearing. (Certified Record (C.R.) at 41-43.)

[2] Duzicky's sentencing was continued three times. *See* C.R. at 60-61.

pandemic. (C.R. at 60-61.) Duzicky was sentenced on the new criminal charges, as scheduled, to one to five years of incarceration in a state correctional institution (SCI) and a concurrent 10-year state probation sentence, with 552 days of credit for time served in the Allegheny County Jail from March 15, 2019, to September 16, 2020. (C.R. at 51-52, 55, 61.) On October 9, 2020, Duzicky retained different counsel, who requested a parole revocation hearing before the Board. (C.R. at 36.)

Duzicky remained confined in the Allegheny County Jail until January 27, 2021, when he was returned to the Department of Corrections' custody at SCI-Greene. (C.R. at 38, 54, 122, 130.) A revocation hearing was initially scheduled for February 25, 2021, but was continued due to Duzicky's unavailability. (C.R. at 37, 121 (indicating "[i]nmate transferred prior to hearing").) On March 1, 2021, the Board issued another Notice of Charges and Hearing, notifying Duzicky that a panel revocation hearing was scheduled for March 9, 2021, due to his new convictions in Allegheny County. (C.R. at 39.)

The Board held the parole revocation hearing as scheduled, via videoconference, during which Duzicky was represented by counsel. (C.R. at 85-120.) A parole agent, Joseph Link (Agent Link), testified during the hearing regarding Duzicky's new convictions in Allegheny County of the underlying crimes which occurred while Duzicky was on parole, and submitted the trial court's sentencing order, secure docket entries indicating Duzicky's guilty plea, and the criminal complaint from the Pittsburgh Police Department into evidence. (C.R. at 92-94, 98-100.) Duzicky also admitted to his new convictions. (C.R. at 93.) Duzicky's counsel then explained three documents he submitted to parole staff: a mitigation memorandum, two letters in support of Duzicky, and the trial court's sentencing transcript, all of which were admitted into evidence for mitigation purposes. (C.R. at 101-04.) Prior to questioning

Duzicky, his counsel explained that he needed to correct some things stated in the mitigation memorandum due to him not being able to talk to "Duzicky for about the last six weeks because he went from Allegheny [County Jail] to [SCI-]Smithfield and was in quarantine, and then he came to [SCI-]Houtzdale and was in quarantine." (C.R. at 104.)

Counsel then questioned Duzicky about his recent whereabouts in the prison system, to which Duzicky responded that he had been in jail since March 15, 2019, and that he went from Allegheny County Jail to SCI-Smithfield, and that he was, at the time of the hearing, incarcerated at SCI-Houtzdale. (C.R. at 106-07.) Duzicky testified that he was "in quarantine" and "[c]omplete lockdown" at all three locations due to the COVID-19 pandemic, and specifically, at Allegheny County Jail since March 16, 2020. (C.R. at 106-07.) Duzicky then testified about his family history, including how he grew up watching his family sell illegal drugs to earn money. (C.R. at 107-08.) He also explained that he found out about his mental health issues once he got to Allegheny County Jail, and that he became involved in the Hope Program; he also admitted to having a gambling problem. (C.R. at 108-11.) Duzicky also testified that he worked every day while he was on parole, never had supervision issues, and earned a GED. (C.R. at 112, 114.) Duzicky confirmed that he reached out to his parole agent once he pled guilty to the new charges and requested a hearing "to see if [he] could, you know, get out on an ankle bracelet or something . . . before [his] sentencing" to see his stepdad who was ill. (C.R. at 114-15.) Agent Link made a closing statement, noting that Duzicky's new convictions were the same or similar to his previous offenses and that he posed a threat and risk to public safety. (C.R. at 117-18.) The hearing then concluded.

4

In a decision mailed on April 14, 2021 (recorded on April 12, 2021), the Board recommitted Duzicky to an SCI as a convicted parole violator (CPV) to serve 18 months of backtime for his Allegheny County convictions of possession of a controlled substance by a person not registered and PWID. (C.R. at 145-46.) In so doing, the Board, in its discretion, denied Duzicky credit for his time spent at liberty on parole because his new convictions were "the same or similar to the original offense[,]" and recalculated Duzicky's maximum sentence date as March 15, 2027. (C.R. at 143-46.)

On May 4, 2021, the Board received Duzicky's counseled administrative appeal, in which Duzicky alleged that the Board failed to hold a timely revocation hearing, incorrectly recalculated his maximum sentence date, and improperly denied Duzicky credit for time he spent at liberty on parole, including credit for time Duzicky spent incarcerated in Allegheny County Jail, and also failed to consider Duzicky's mitigation evidence. (C.R. at 147-85.)

In its response mailed on July 28, 2021, the Board affirmed its April 14, 2021 decision. (C.R. at 187-89.) In so doing, the Board explained that Duzicky's revocation hearing was, in fact, timely held because Duzicky chose not to waive his right to a revocation hearing while being held at the Allegheny County Jail. (C.R. at 187.) Further, because Duzicky was then being held outside the jurisdiction of the Department of Corrections, the Board's regulations required that the Board hold a panel revocation hearing within 120 days of the official verification of Duzicky's return to an SCI. (C.R. at 187 (citing section 71.4(1)(i) of the Board's regulations, 37 Pa. Code § 71.4(1)(i)).) Because Duzicky was returned to an SCI on January 27, 2021, and his hearing was held 41 days later on March 9, 2021, the Board determined that Duzicky's panel revocation hearing was timely. *Id.*

5

Regarding its decision to deny Duzicky credit for time spent at liberty on parole, the Board explained that the issue is purely a matter of discretion under the Prisons and Parole Code (Parole Code),[3] which authorizes the Board to grant or deny credit to a CPV for time spent at liberty on parole for certain offenses and requires only that the Board give a reason for its decision to deny credit, which it did here.  (C.R. at 187 (citing section 6138(a)(2.1) of the Parole Code, 61 Pa. C.S. § 6138(a)(2.1)).)  The Board also determined that the reason it gave for denying Duzicky credit for time spent at liberty on parole was sufficient pursuant to *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466 (Pa. 2017), as it articulated that Duzicky was denied such credit because his new conviction was the same or similar to the original offense.  (C.R. at 187-88.)

Finally, the Board explained Duzicky's recalculated maximum sentence date as follows:

> The Board paroled [] Duzicky on April 24, 2017[,] with a maximum date of April 24, 2023[,] leaving him with 2[,]191 days remaining on his original sentence the day he was released.  The Board's decision to deny [] Duzicky credit for the time spent at liberty on parole based on his recommitment as a CPV authorized the recalculation of his maximum date to reflect the same.  61 Pa. C.S. § 6138(a)(2).  This means that [] Duzicky owed 2[,]191 days on his original sentence based on the recommitment.

> The record indicate[s] that Allegheny [C]ounty authorities arrested [] Duzicky on March 15, 2019[,] for new criminal charges, he did not post bail, and the Board lodged its detainer that day.  On September 16, 2020, [] Duzicky was sentenced to a new term of incarceration to be served in an SCI.  Following the March 9, 2021 revocation hearing, the Board voted to revoke [Duzicky's] parole on March 15, 2021.  Based on these facts, because [] Duzicky failed

---

[3] 61 Pa. C.S. §§ 101-7301.

to post bail, the Board applied no pre[]sentence credit because the Board did not hold him solely on its warrant following the March 15, 2019 arrest. *Gaito v.* [*Pennsylvania*] *Board of Probation and Parole*, 412 A.2d 568 (Pa. 1980). Such credit must be applied to the new sentence and [] Duzicky still owed 2[,]191 days on his original sentence.

The . . . Parole Code provides that a CPV who was released from an SCI and receives a new sentence to be served in an SCI must serve the original sentence first. 61 Pa. C.S. § 6138(a)(5). However, that provision does not take effect until the Board revokes the offender's parole. *Campbell v.* [*Pennsylvania*] *Board of Probation and Parole*, 409 A.2d 980 (Pa. 1980). This means that [] Duzicky became available to commence service of his original sentence on March 15, 2021. Adding 2[,]191 days to that availability date yields a recalculated maximum date of March 15, 2027. Thus, the Board properly recalculated his maximum date. Again, please note that credit not applied to the original sentence will be calculated by the Department of Corrections and allocated toward the new state sentence upon commencement of that term.

(C.R. at 187-88.) The Board thus affirmed its April 14, 2021 decision. Duzicky, through counsel, now petitions this Court for review of the Board's decision.[4]

**Discussion**

On appeal, Duzicky raises three issues. First, he argues that the Board failed to hold a timely revocation hearing, in that it failed to hold the hearing within 120 days of Duzicky's sentencing on September 16, 2020, at which time he became available to the Board. Duzicky's Brief at 7, 12-16. Second, Duzicky claims that the

---

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *McCloud v. Pennsylvania Board of Probation and Parole*, 834 A.2d 1210, 1212 n.6 (Pa. Cmwlth. 2003).

Board abused its discretion in denying Duzicky credit for the time he spent at liberty on parole and disregarding his mitigation evidence in doing so. Duzicky's Brief at 7, 16-20. Finally, Duzicky argues that he was unduly prejudiced by the Board's failure to interview him for parole after he served the first year of his new one- to five-year sentence. Duzicky's Brief at 7, 20-25. Duzicky requests that this Court reverse the Board's decision with respect to its revocation of Duzicky's parole. Duzicky's Brief at 26.

We begin with Duzicky's claim that the Board failed to timely hold a panel revocation hearing in this case. Citing *Mack v. Pennsylvania Board of Probation and Parole*, 654 A.2d 129 (Pa. Cmwlth. 1995), Duzicky argues that, when he was sentenced on September 16, 2020, he was confined at the Allegheny County Jail solely on the Board's warrant, and that the 120-day period began to run as of that date. He further claims that he essentially began serving two state sentences upon his sentencing, all while being held at the county jail. Because he was within the Board's jurisdiction as of the date of his sentencing, Duzicky argues that the revocation hearing held on March 9, 2021, nearly 174 days after his sentencing, was untimely. Duzicky's Brief at 12, 14.

The Board responds that it conducted a timely revocation hearing in this case, as it held the hearing within 120 days of Duzicky's return to an SCI, as per the regulation. Board's Brief at 6-7. The Board appears to admit that "the record is silent as to a return verification date," and surmises that "the actual return date is the standard that must be used." Board's Brief at 7. The Board then distinguishes *Mack* from the instant matter, stating that Duzicky was not being held solely on the Board's warrant after his sentencing on September 16, 2020, but, rather, he was awaiting the trial court's commitment of him to be transferred to an SCI to begin serving his backtime. Board's

8

Brief at 8. Further, the Board explains, unlike other cases cited by Duzicky, there is nothing in the record showing that Duzicky was being held at the Allegheny County Jail at the Board's request, or that the Board was even made aware that Duzicky was available on the date of his sentencing. Board's Brief at 8-9. The Board suggests, in a footnote, that this Court "should take judicial notice of the impact [COVID-19] . . . had on the ability of county correctional administrators and the local courts to effectively run their respective systems." Board's Brief at 9 n.2. The Board therefore requests that this Court defer to the Board's regulation and hold that the revocation hearing was timely held in this matter. Board's Brief at 9.

Essentially, the issue in this case boils down to whether the Board conducted its hearing in a timely manner 41 days after Duzicky's return to an SCI or in an untimely manner 174 days after Duzicky was sentenced on September 16, 2020. Section 71.4(1) of the Board's regulations, 37 Pa. Code § 71.4(1), provides that:

> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level **except as follows**:
>
> > (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, . . . 314 A.2d 842 ([Pa.] 1973), **the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility**.
> >
> > (ii) A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision

9

shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

(Emphasis added.)

This regulation is based upon the well-established principle that the 120-day period does not begin to run until the Board acquires jurisdiction over the parolee. *Williams v. Pennsylvania Board of Probation and Parole*, 579 A.2d 1369, 1371 (Pa. Cmwlth. 1990). Where a parolee asserts that the Board held a revocation hearing beyond the 120-day period, the Board bears the burden of proving, by a preponderance of the evidence, that the hearing was timely. *Koehler v. Pennsylvania Board of Probation and Parole*, 935 A.2d 44, 50 (Pa. Cmwlth. 2007).

Here, it is undisputed that Duzicky did not waive his right to a panel revocation hearing at any time. The Board's record establishes that Duzicky's convictions were officially verified on February 10, 2020, and that he was returned to an SCI on January 27, 2021. (C.R. at 38, 42, 122, 130.) Therefore, the revocation hearing held on March 9, 2021, 41 days after Duzicky's return to an SCI, was timely under a plain reading of section 71.4(1)(i) of the Board's regulations.

Duzicky contends, however, that the 120-day period began to run on September 16, 2020, when he was sentenced on his new Allegheny County convictions, as the Board never lifted its detainer against Duzicky. Thus, according to Duzicky, the revocation hearing held on March 9, 2021, nearly 174 days after he was sentenced, was untimely.

We recognize that "[u]nreasonable and unjustifiable delays which are not attributable to the parolee or his counsel do not toll the running of the 120 days." *Mack*, 654 A.2d at 131. Further, "[w]here a parolee is held at the county institution solely as a result of the Board's action, the Board is not warranted in delaying a revocation hearing until 120 days after the parolee's return to [an SCI]." *Id.* "Furthermore, a

10

parolee being held at a county institution as a result of Board action in the form of a detainer places the parolee within the Board's jurisdiction, and the Board must conduct a hearing within 120 days from the date which it acquires jurisdiction." *Id.*

Upon his sentencing on September 16, 2020, Duzicky remained confined in Allegheny County Jail solely on the Board's March 15, 2019 warrant until he was returned to an SCI by county authorities on January 27, 2021. (C.R. at 38, 122, 130.) Thus, it appears Duzicky is correct that the Board would have obtained jurisdiction over him on September 16, 2020, immediately following his sentencing, and that the exception in section 71.4(1)(i) would therefore not apply under these circumstances. *See Murray v. Jacobs*, 512 A.2d 785, 789 (Pa. Cmwlth. 1986); *see also Griffin v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 762 C.D. 2018, filed April 12, 2019), slip op. at 3.[5] It further appears that the Board was required to hold a revocation hearing within 120 days from September 16, 2020, or by January 14, 2021, for it to be considered timely. Therefore, the panel revocation hearing held on March 9, 2021, appears to have been untimely held.

However, section 71.5(c) of the Board's regulations, 37 Pa. Code § 71.5(c), provides additional guidance, as follows:

> (c) In determining the period for conducting hearings under this chapter, **there shall be excluded from the period, a delay in any stage of the proceedings which is directly or indirectly attributable to one of the following**:
>
> > (1) **The unavailability of a parolee** or counsel.
>
> > . . . .

---

[5] *Griffin*, an unreported opinion of this Court issued after January 15, 2008, is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

11

**(5) An event which could not be reasonably anticipated or controlled by the Board, including, but not limited to, illness, injury, acts of nature and prison or civil disorder**.

Although the Board has not provided much detail regarding its suggestion, set forth in a footnote in its brief, that this Court "should take judicial notice of the impact [COVID-19] . . . had on the ability of county correctional administrators and the local courts to effectively run their respective systems[,]" as it relates to Duzicky's case specifically, *see* Board's Brief at 9 n.2, we nevertheless will take judicial notice of the historic and novel COVID-19 pandemic and the Governor's response thereto,[6] as well as the effect the pandemic had on prison operations at both the county and state levels.[7] *See Wiley v. Pennsylvania Board of Probation and Parole*, 801 A.2d 644, 645

---

[6] On March 6, 2020, Governor Wolf issued a Proclamation of Disaster Emergency regarding the novel COVID-19 pandemic. Thereafter, the Governor issued numerous orders designed to mitigate and stop the spread of COVID-19, which orders, *inter alia*, closed non-essential businesses and directed citizens to stay at home. The Proclamation was renewed multiple times through May 2021. *See Corman v. Acting Secretary of Pennsylvania Department of Health*, 267 A.3d 561, 567-68 (Pa. Cmwlth.), *aff'd*, 268 A.3d 1080 (Pa., No. 83 MAP 2021, December 10, 2021) (per curiam order); 266 A.3d 452 (Pa. 2021) (opinion explaining Court's reasoning for affirming).

[7] On March 16, 2020, the Supreme Court declared a general statewide judicial emergency. County courts thereafter declared judicial emergencies in their respective districts, including in the Fifth Judicial District. *See In Re: Fifth Judicial District Emergency Operations* (No. AD - 2020 - ___ - PJ, order filed March 16, 2020) (declaring judicial emergency in Fifth Judicial District of Pennsylvania through April 14, 2020, pursuant to Pennsylvania Supreme Court's March 16, 2020 order). The judicial emergency in the Fifth Judicial District was extended numerous times through March 2021. *See* Allegheny County Court Orders (dated April 2, 2020 (extending through May 8, 2020), May 6, 2020 (extending through June 1, 2020), August 31, 2020 (extending through December 31, 2020), and December 3, 2020 (extending through March 31, 2021)), available at https://www.pacourts.us/ujs-coronavirus-information (last visited June 13, 2022).

Additionally, throughout the duration of the judicial emergency in the Fifth Judicial District, various orders were entered by the President Judge of the Allegheny County Court of Common Pleas directing that "no inmates . . . will be transported from state correctional facilities, county jails or prisons, . . ." until further order of the court. *See* Allegheny County Court Orders (dated March 18, 22, 23, & 26, 2020; May 6, 2020; May 28, 2020 (extending directive regarding transportation of inmates through August 31, 2020); and August 31, 2020 (extending non-transfer of certain inmates

**(Footnote continued on next page…)**

n.3 (Pa. Cmwlth. 2002) (Court took judicial notice of the historic events of September 11, 2001, and the Governor's response thereto, citing *Fatemi v. Fatemi*, 537 A.2d 840 (Pa. Super. 1988) (matters of history, if sufficiently notorious to be subject to general knowledge, will be judicially noticed)). Moreover, Duzicky himself testified at the panel revocation hearing held on March 9, 2021, that he was on complete lockdown in quarantine while incarcerated at the Allegheny County Jail, as well as at SCI-Smithfield and SCI-Houtzdale. (C.R. at 106-07.)[8] Further, the Board apparently scheduled a revocation hearing for February 23, 2021; however, due to Duzicky's unavailability, the hearing was continued. (C.R. at 37.)

Therefore, we conclude that the period of September 16, 2020, through January 27, 2021, during which Duzicky remained in county custody on a Board warrant awaiting transfer to an SCI to begin serving the backtime on his original sentence, should be excluded from the 120-day period because it was directly the result of the COVID-19 pandemic's effect on prison operations and the lockdowns attendant thereto. Thus, under the circumstances of this case, we deem the March 9, 2021 panel revocation hearing timely held pursuant to the Board's regulations, as it was held only 41 days following Duzicky's return to an SCI.

---

through December 31, 2020)), available at https://www.pacourts.us/ujs-coronavirus-information (last visited June 13, 2022).

[8] The transcript of Duzicky's sentencing, entered into evidence at the panel revocation hearing for purposes of mitigation, also reveals details about COVID-19's effect on court and prison operations during the relevant timeframe: "THE COURT: . . . the pandemic occurred and there were a lot of issues related to the logistics of having the defendant sentenced . . . from May 11th the case was continued again at various times. There was no transport from the jail due to lockdowns related to quarantine, court closures, you know, basically, a lot of reasons. So I just wanted to make the record as to why the defendant was not sentenced within 90 days of his plea, and it was all really pandemic-related." (C.R. at 153-54.)

Next, we address Duzicky's claim that the Board abused its discretion in denying him credit for the time he spent at liberty on parole. Section 6138(a)(2), (2.1) of the Parole Code provides that:

> (2) If a [CPV's] recommitment is so ordered, the [CPV] shall be reentered to serve the remainder of the term which the [CPV] would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.
>
> (2.1) The [B]oard may, in its discretion, award credit to a [CPV] recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:
>
>> (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence . . . or a crime requiring registration under 41 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).
>>
>> (ii) The [CPV] was recommitted under [S]ection 6143 [of the Code] (relating to early parole of inmates subject to Federal removal order).

61 Pa. C.S. § 6138(a)(2), (2.1).[9]  Our Supreme Court held in *Pittman* that Section 6138(a)(2) "clearly and unambiguously grants the Board discretion to award credit to a CPV recommitted to serve the remainder of his sentence," other than in the enumerated exceptions. *Pittman*, 159 A.3d at 473.  The Supreme Court further held that "the Board must provide a contemporaneous statement explaining its reason for denying a CPV credit for time spent at liberty on parole." *Id.* at 475.

---

[9] We note that various sections of the Parole Code, including Section 6138, have recently been amended by the Act of June 30, 2021, P.L. 260, effective immediately.  While the substance of the pertinent statutory section both prior to and after the amendments is essentially the same, we nevertheless reference the version of the Parole Code that was in effect at the time the Board rendered its decision in this matter.

14

Duzicky's argument related to this issue appears to imply that he thinks he is eligible to receive credit for his time at liberty on parole because the crimes for which he was convicted are not crimes of violence and do not require him to register as a sex offender, and further because the Board failed to consider mitigating factors related to his convictions in determining the amount of backtime owed. Duzicky's Brief at 16-20. This Court notes, however, that section 6138(a)(2.1) of the Parole Code does not give Duzicky the right to receive credit for time spent at liberty on parole. Rather, section 6138(a)(2.1) gives the Board complete discretion, as Duzicky acknowledges in his brief, *see* Duzicky's Brief at 19-20, to award a CPV credit for time spent at liberty on parole unless the CPV committed a crime of violence or a crime requiring sex offender registration, in which case, the Board is given no discretion and is required to take away the CPV's time spent at liberty on parole. Upon Duzicky's recommitment as a CPV, he was required to serve the remainder of the term that he would have been compelled to serve had he not been granted parole, with no credit for time spent at liberty on parole, unless the Board, in the exercise of its sole discretion, chose to award credit. Section 6138(a)(2), (2.1) of the Parole Code, 61 Pa. C.S. § 6138(a)(2), (2.1). Because Duzicky did not commit a crime of violence or a crime requiring that he register as a sex offender, the Board was empowered to exercise its discretion under section 6138(a)(2.1) and determine whether to grant Duzicky credit for the time that he spent at liberty on parole. The Board chose not to do so in this case and explained its reason for denying Duzicky credit for his street time by noting on the revocation hearing report that it would deny Duzicky credit because his new conviction (PWID) is the same or similar to his original offense (PWID). (C.R. at 124, 145.) We have previously held that "same or similar to the original offense" is a sufficient reason

for denying credit under *Pittman*. *See Barnes v. Pennsylvania Board of Probation and Parole*, 203 A.3d 382, 391 (Pa. Cmwlth. 2019).

We also note that the Board's stated reason is amply supported by the record in this matter, which reflects that Duzicky's parole stemmed from his 2011 convictions for multiple counts of PWID, criminal attempt – PWID, corrupt organizations, and conspiracy to commit corrupt organizations, and that his subsequent conviction for PWID was obviously similar to his original convictions because all of the convictions involved drugs. (C.R. at 1-4.) Furthermore, although Duzicky was generally compliant with supervision up until he was arrested on the new charges, (*see* C.R. at 16, 30, 123), the revocation hearing report in this matter indicates that Duzicky "has continued to deal drugs"; his "new conviction involved 2.2 pounds of cocaine"; and "[h]is drug dealing continues to generate new victims." (C.R. at 123.)

We also reject Duzicky's claim that the Board failed to consider his mitigation evidence. The revocation hearing report clearly acknowledges his mitigation evidence presented at and admitted into evidence at the hearing, stating that Duzicky offered documentation and testimony regarding his "rough upbringing," his completion of the Hope Program in Allegheny County Jail, his work history, and his positive adjustment up until his arrest. (C.R. at 123.) While we are sympathetic to Duzicky and applaud his efforts to better his life following his most recent arrest, it is well settled that the Board has been given broad discretion in parole matters and is not required to accept justifying or mitigating evidence to excuse the commission of parole violations and, therefore, does not abuse its discretion where it determines that mitigating evidence presented by a parolee does not excuse the commission of parole violations. *Pitch v. Pennsylvania Board of Probation and Parole*, 514 A.2d 638, 641

(Pa. Cmwlth. 1986). We therefore reject Duzicky's claim that the Board abused its discretion in denying him credit for the time that he spent at liberty on parole.

Finally, we address Duzicky's claim that he was unduly prejudiced by the Board's failure to interview him for parole after he served the first year of his new one-to five-year sentence. Duzicky's argument in this regard is not entirely clear. *See* Duzicky's Brief at 20-25. However, we glean his argument to be that the Board should have granted him a parole interview between the time he was sentenced on September 16, 2020, and his recommitment as a CPV on April 12, 2021. We disagree.

"[I]t is axiomatic that, in Pennsylvania, the decision to parole, or . . . re-parole, is discretionary with the Board, . . . and that there is no right to be paroled or re-paroled." *White v. Pennsylvania Board of Probation and Parole*, 833 A.2d 819 (Pa. Cmwlth. 2003) (citing *Reider v. Pennsylvania Board of Probation and Parole*, 514 A.2d 967 (Pa. Cmwlth. 1986)). Here, Duzicky has not been unduly prejudiced by the Board's decision not to interview him for parole during the alleged timeframe because Duzicky had not yet been recommitted as a CPV or begun serving his backtime, but, rather, he remained in county custody following his sentencing while awaiting transfer to an SCI. Moreover, because Duzicky was released from an SCI and received a new sentence to be served in an SCI, he was required to serve the backtime on his original sentence prior to serving his new sentence pursuant to section 6138(a)(5) of the Parole Code, 61 Pa. C.S. § 6138(a)(5). That provision does not take effect, however, until the Board revokes the parolee's parole and the remainder of the original sentence becomes due and owing. *Campbell*. Here, Duzicky did not become available to commence service of his backtime until March 15, 2021, when the final Board member signed the revocation hearing report. (C.R. at 128-29.) Further, according to the Board's April 14, 2021 decision, Duzicky was not even determined to be eligible for reparole until

17

September 15, 2022.  (C.R. at 145.)  Duzicky's allegation of prejudice is therefore without merit.

Accordingly, for the foregoing reasons, we affirm the Board's July 28, 2021 order.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Duzicky,                       :

         Petitioner          :

                               :   No.  945 C.D. 2021

      v.                      :

                               :

Pennsylvania Parole Board,     :

         Respondent    :

## ***ORDER***

AND NOW, this 14th day of June, 2022, the July 28, 2021 order of the Pennsylvania Parole Board is AFFIRMED.

_____

PATRICIA A. McCULLOUGH, Judge