# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bobby Leon Cook,            :
          Petitioner        :
                                   :
      v.                       :
                                   :
Pennsylvania Parole Board,      :    No. 403 C.D. 2024
          Respondent      :    Submitted: July 7, 2025

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: November 10, 2025

Bobby Leon Cook (Cook) petitions this Court for review (Petition) of the Pennsylvania Parole Board's (Board) decision mailed March 8, 2024, denying his request for administrative relief. Cook is represented in this matter by Nicholas E. Newfield, Esquire (Counsel) who has filed an Application to Withdraw as Counsel (Application) and submitted a no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) (*Turner* Letter)[1] in support thereof. After review, this Court grants Counsel's Application and affirms the Board's order.

---

[1] Through this type of letter, an attorney seeks to withdraw from representation of a parole violator because "the [violator's] case lacks merit, even if it is not so anemic as to be deemed wholly frivolous." *Com*[*monwealth*] *v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007).

Such letters are referred to by various names by courts of this Commonwealth. *See, e.g., Commonwealth v. Porter*, . . . 728 A.2d 890, 893 [] n.2 ([Pa.] 1999) (referring

Cook is currently incarcerated at the State Correctional Institution (SCI) at Huntingdon.[2]  On August 17, 2010, Cook pled guilty to robbery for which the Washington County (County) Common Pleas Court sentenced him to 4 to 8 years of incarceration (Original Sentence).  Cook's minimum sentence release date was August 17, 2014, and his maximum sentence release date was August 17, 2018.  *See* Certified Record (C.R.) at 1.  On April 30, 2014, the Board paroled Cook with a release date of August 18, 2014.  *See* C.R. at 4-13.  On November 5, 2014, the Board declared Cook delinquent on parole.  *See* C.R. at 14.  On May 7, 2015, the Board recommitted Cook as a Technical Parole Violator to serve 6 months of backtime, resulting in a new Original Sentence maximum release date of January 7, 2019.  *See* C.R. at 15-20.

On September 28, 2015, the Board again released Cook on parole.  *See* C.R. at 21-25.  On November 13, 2015, the Board declared Cook delinquent.  On March 30, 2016, the County police arrested Cook on new criminal charges (New Charges) and transported him to the County Jail.  On March 30, 2016, the Board issued a Warrant to Commit and Detain Cook.  *See* C.R. at 27.  The County *nolle prossed* the New Charges because, on January 25, 2017, federal authorities brought charges by Federal Indictment (Federal Charges).  *See* Certified Record (C.R.) at 31, 35-37, 57-71, 138-153.  On April 19, 2017, the Board cancelled the March 30, 2016

to such a letter as a "'no merit' letter" and noting that such a letter is also commonly referred to as a "*Finley* letter," referring to the Superior Court case *Commonwealth v. Finley*, . . . 479 A.2d 568 ([Pa.] 1984)); *Zerby v. Shanon*, 964 A.2d 956, 960 (Pa. Cmwlth. 2009) ("*Turner* [L]etter"); *Commonwealth v. Blackwell*, 936 A.2d 497, 499 (Pa. Super. [] 2007) ("*Turner/Finley* letter").

*Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 25 n.2 (Pa. Cmwlth. 2009).

*Anderson v. Pa. Bd. of Prob. & Parole*, 237 A.3d 1203, 1204 n.2 (Pa. Cmwlth. 2020).

[2] *See* http://inmatelocator.cor.pa.gov (last visited Nov. 7, 2025).

Warrant to Commit and Detain. *See* C.R. at 28. However, that same day, the Board reissued a Warrant to Commit and Detain, which stated:

> Convicted Parole Violator [(CPV)] Past Max[.] Although [Cook's] [O]riginal maximum [S]entence [release date] was [January 7, 2019], the maximum sentence is being extended due to a new conviction. The new maximum sentence [release date] will be computed upon recording of the Board's final action. [Cook] owes approximately 3 years, 3 months and 10 days.

C.R. at 29. Cook remained in the County Jail.

Cook pled guilty to the Federal Charges on January 3, 2019. On June 18, 2019, the United States District Court for the Western District of Pennsylvania (Federal Court) sentenced Cook on the Federal Charges to 100 months of incarceration followed by 5 years of supervised probation on the Possession with the Intent to Distribute Heroin and Possession of a Firearm and Ammunition by a Convicted Felon charges (Federal Sentence). *See* C.R. at 152. The Federal Court committed Cook on July 22, 2019. *See id.* The Federal Court Public Information Inmate Data sheet reflects the Federal Court awarded Cook time served on the Federal Charges for the period March 30, 2016 through June 17, 2019. *See* C.R. at 152-153.

Cook completed his Federal Sentence on June 2, 2023. On August 3, 2023, Cook participated in a Board Panel Revocation Hearing, during which he acknowledged the Federal Sentence. *See* C.R. at 31-153, 47-53. By Board action recorded on August 18, 2023 (mailed August 30, 2023), the Board recommitted Cook as a CPV to serve 24 months of backtime.[3] *See* C.R. at 89-90. The Board recalculated Cook's Original Sentence maximum release date to September 11,

---

[3] In its August 18, 2023 decision, the Board explained that it had exercised its discretion not to award Cook credit for time spent at liberty on parole because: (1) Cook absconded while on parole supervision; (2) Cook committed a new offense involving possession of a weapon; and (3) Cook continues to demonstrate unresolved drug or alcohol issues. *See* C.R. at 239.

2026. *See* C.R. at 155-158. On September 15, 2023, Cook filed a pro se administrative remedies form with the Board. By decision mailed March 8, 2024, the Board affirmed the Board's August 18, 2023 decision. Cook appealed to this Court.[4]

On June 27, 2024, Counsel filed the Application and the *Turner* Letter, asserting that Petitioner's issues lack merit. By July 2, 2024 Order (Order), this Court informed Petitioner that he may, within 30 days after service of the Order on him by Counsel, either obtain substitute counsel at his own expense and have new counsel enter an appearance and file a brief in support of the Petition, or file a brief on his own behalf.[5]

Before addressing Cook's substantive arguments, this Court must assess the adequacy of Counsel's *Turner* Letter. This Court has explained:

> "A [*Turner*] letter must include an explanation of 'the nature and extent of counsel's review and list each issue the petitioner wished to have raised, with counsel's explanation of why those issues are meritless.'" *Seilhamer*[ *v. Pa. Bd. of Prob. & Parole*], 996 A.2d [40,] 43 [(Pa. Cmwlth. 2010)] (quoting *Turner*, 544 A.2d at 928) (some alterations omitted). As long as a *Turner* letter satisfies these basic requirements, [this Court] may then review the soundness of a petitioner's request for relief. *Zerby*[ *v. Shanon*], 964 A.2d [956,] 960 [(Pa. Cmwlth. 2009)]. However, if the *Turner* letter fails on technical grounds, [this Court] must deny the request for leave to withdraw, without delving into the substance of the underlying petition for review, and may direct counsel to file either an amended request for leave to withdraw or a brief on behalf of their client. *Id*.

---

[4] This Court's "review of the Board's decision denying administrative relief is limited to determining whether necessary findings of fact are supported by substantial evidence, an error of law was committed, or constitutional rights have been violated." *Fisher v. Pa. Bd. of Prob. & Parole*, 62 A.3d 1073, 1075 n.1 (Pa. Cmwlth. 2013).

[5] Counsel advised Petitioner regarding the same in his *Turner* Letter. On July 30, 2024, Counsel served the Order on Petitioner. Petitioner did not retain new counsel or file a pro se brief.

*Anderson v. Pa. Bd. of Prob. & Parole*, 237 A.3d 1203, 1207 (Pa. Cmwlth. 2020) (citation omitted). "[C]ounsel must fully comply with the procedures outlined in *Turner* to ensure that each of the petitioner's claims has been considered and that counsel has [] substantive reason[s] for concluding that those claims are meritless." *Hont v. Pa. Bd. of Prob. & Parole*, 680 A.2d 47, 48 (Pa. Cmwlth. 1996). Counsel is also required to "notify the parolee of his request to withdraw, furnish the parolee with [] a copy of . . . [the] no-merit letter satisfying the requirements of *Turner*, and inform the parolee of his right to retain new counsel or submit a brief on his own behalf." *Reavis v. Pa. Bd. of Prob. & Parole*, 909 A.2d 28, 33 (Pa. Cmwlth. 2006). This Court must then "conduct its own independent review of the petition to withdraw and must concur in counsel's assessment before [it] may grant counsel leave to withdraw." *Hont*, 680 A.2d at 48.

Here, Counsel has satisfied the technical requirements of *Turner*. Counsel thoroughly discussed the nature of his review, identified the issues raised in Petitioner's administrative appeal, and explained why those issues lack merit. *See Turner* Letter at 1-4. Counsel served copies of both the Application and *Turner* Letter on Petitioner and the Board. In addition, Counsel advised Petitioner of his right to proceed pro se or with new counsel, and Counsel served this Court's Order on Petitioner reiterating those rights. Accordingly, this Court concludes that Counsel complied with *Turner's* technical requirements for withdrawing from representation.

This Court next considers the merits of Cook's arguments. In his Petition, Cook argues that the Board is obligated to credit him for the time he spent in custody due to the Board's March 30, 2016 Warrant to Commit and Detain. *See* C.R. at 160.

In its March 8, 2024 response to Cook's administrative remedies form, the Board explained:

> The Board paroled [] Cook from a[n] . . . SCI[] on September 28, 2015[,] with a maximum [sentence release] date on his [O]riginal [S]entence of January 7, 2019. This means that [Cook] was left with 1,197 days to serve on his [O]riginal [S]entence the last time he was released on parole. The Board's decision to recommit him as a [CPV] authorized the recalculation of his maximum [sentence release] date to reflect that he received no credit for the time spent at liberty on parole. [Section 6138 (a)(2) of the Prison and Parole Code (Code),] 61 Pa.C.S. § 6138(a)(2). In this case, the Board denied [Cook] credit for time spent at liberty on parole. Therefore, he still owed 1,197 days on his [O]riginal [S]entence based on the recommitment.
>
> The record reveals that on March 30, 2016, [] Cook was arrested by local authorities in [the] County for [New Charges], and a Board detainer was lodged against him that same day. On February 28, 2017, federal authorities arrested [Cook] for charges based on the [] County investigation. There is no indication that he posted bail on the new [F]ederal [C]harges. On June 18, 2019, he was sentenced in the [Federal Court] (case number 17-20-01) to serve 100 months in federal prison. On June 2, 2023, [Cook] completed his [F]ederal [S]entence. On August 3, 2023, a panel revocation hearing was held.
>
> Based on the above facts, [] **Cook is not entitled to any backtime credit towards his [O]riginal [S]entence because <u>the [F]ederal [S]entence data sheet indicates he was already given federal jail credit from March 30, 2016 (date of initial arrest) to sentencing</u>**. Thus, he still owed 1,197 days on his [O]riginal [S]entence.

C.R. at 284 (bold and underline emphasis added). Because the Certified Record reflects that Cook received credit for the period between March 30, 2016, and his federal sentencing date, *see* C.R. at 153, his argument is without merit.

6

Cook asserts, in the alternative, that he should have served his Original Sentence prior to serving the Federal Sentence, pursuant to Section 6138(a) of the Code. Section 6138(a) of the Code states, in relevant part:

**Convicted violators.**

(1) The [B]oard may, at its discretion, revoke the parole of a paroled offender if the offender, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the offender is convicted or found guilty by a judge or jury or to which the offender pleads guilty or nolo contendere at any time thereafter in a court of record.

. . . .

(5) If a new sentence is imposed on the offender, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:

(i) If a person is paroled from a[n SCI] and the new sentence imposed on the person is to be served in the [SCI].

(ii) If a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison.

(iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

61 Pa.C.S. § 6138(a).

In contrast, Section 6138(a)(5.1) of the Code provides:

**If the offender is sentenced to serve a new term of total confinement by a [f]ederal court or by a court of another jurisdiction because of a verdict or plea under**

7

**paragraph (1)**, **the offender shall serve the balance of the original term before serving the new term.**[6]

61 Pa.C.S. § 6138(a)(5.1) (emphasis added).

The Board rejected Cook's argument, reasoning:

Because [] Cook was sentenced to federal incarceration, the [] Code provides that he serve the balance of the [O]riginal [S]entence before serving the new sentence. 61 Pa.C.S.§ 6138(a)(5.1). However, **that provision is contingent on federal authorities actually releasing him to return to the SCI. The Board has no mechanism to remove a federal inmate from serving a sentence in federal custody**, **nor can it compel federal authorities to comply with the statute. Thus**, **he became available to commence service of his [O]riginal [S]entence on June 2**, **2023**[,] **when he satisfied his new [F]ederal [S]entence**. Adding 1,197 days to June 2, 2023[,] yields a recalculated maximum [sentence release] date of September 11, 2026.

C.R. at 284.

In *Brown v. Pennsylvania Board of Probation & Parole*, 184 A.3d 1021 (Pa. Cmwlth. 2017),

[an inmate] argue[d] that, pursuant to . . . [S]ection [6138(a)(5.1) of the Code], he **must** serve the remainder of his original sentence first and . . . he became available to the Board at the time of his federal conviction and, therefore, a revocation hearing should have been held within 120 days of the Board's receipt of the official verification of that conviction.

*Id*. at 1027.

---

    [6] The Pennsylvania Supreme Court explained: "The plain language of [Section 6138(a)(5.1) of the Code] provides only that a [CPV] shall serve the balance of his original state sentence before serving a new sentence imposed by a federal court or court of other jurisdiction." *Smith v. Pa. Bd. of Prob. & Parole*, 171 A.3d 759, 769 (Pa. 2017).

The *Brown* Court observed:

> [The inmate] does not dispute that he was in federal custody both before and after his federal sentencing and when the Board received official verification of his conviction. His argument presumes that the Board had the **ability to obtain him from federal custody** in order to hold a revocation hearing and recommit him as a CPV to serve the remainder of his original sentence in accordance with Section 6138(a)(5.1) [of the Code]. However, the Board asserts that it does not have the ability to acquire a Pennsylvania parolee from the custody of another jurisdiction in order to recommit the parolee to serve the remainder of the original sentence. [The inmate] has not provided any legal authority that grants the Board this authority. Thus, . . . [the inmate] was **already unavailable to the Board** when he pled guilty and was sentenced, as well as when it received official verification of his conviction. <u>The Board could not have acquired [the inmate] until after his release from federal custody</u> . . . .

*Id*. (underline emphasis added).

Here, consistent with *Brown*, the Board explained that it "has no mechanism to remove a federal inmate from serving a sentence in federal custody, nor can it compel federal authorities to comply with the statute. Thus, [Cook] became available to commence service of his [O]riginal [S]entence on June 2, 2023[,] when he satisfied his new [F]ederal [S]entence." C.R. at 284. Accordingly, Cook's alternative claim that he should have served his Original Sentence before he served his Federal Sentence fails.

Cook also contends that, pursuant to the primary jurisdiction doctrine,[7] his pre-sentence confinement credit should have been applied to his Original

---

[7] The primary jurisdiction doctrine provides:

> The sovereign which first arrests a defendant has primary jurisdiction over him. Primary jurisdiction remains vested in the sovereign that first arrested the defendant until it relinquishes its

9

Sentence rather than his more recent Federal Sentence in accordance with *Baasit v. Pennsylvania Board of Probation & Parole*, 90 A.3d 74 (Pa. Cmwlth. 2014), *disapproved of by Smith v. Pennsylvania Board of Probation & Parole*, 171 A.3d 759 (Pa. 2017).

Initially, "[t]he general rule governing the allocation of credit for time served awaiting disposition of new criminal charge[s] was established by our Supreme Court in *Gaito v. Pennsylvania Board of Probation [&] Parole*, . . . 412 A.2d 568 ([Pa.] 1980)."[8] *Armbruster v. Pa. Bd. of Prob. & Parole*, 919 A.2d 348, 352 (Pa. Cmwlth. 2007) (superseded by statute). Pursuant to *Gaito*, "this Court consistently [has] held that once a parolee is sentenced on a new criminal offense, the period of time between arrest and sentencing, when bail is not satisfied [on the new criminal charge], must **be applied toward the new sentence**, and not to the original sentence."[9] *Armbruster*, 919 A.2d at 352 (emphasis added). "*Gaito* remains

---

> priority of jurisdiction by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence.

*Newsuan v. Pa. Dep't of Corr.*, 853 A.2d 409, 411 (Pa. Cmwlth. 2004) (citation omitted).

[8] The Code was consolidated and became effective on October 13, 2009. *Gaito* was based upon Section 21.1 of what was commonly known as the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, added by Section 5 of the Act of August 24, 1951, P.L. 1401, *formerly* 61 P.S. § 331.21a(a), repealed by the Act of August 11, 2009, P.L. 147. Section 21.1(a) of the Parole Act similarly stated:

> Any parolee under the jurisdiction of the [Board] released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which . . . he pleads guilty . . . in a court of record, may, at the discretion of the [B]oard, be recommitted as a parole violator. If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole . . . .

*Former* 61 P.S. § 331.21a(a) (repealed).

[9] If the parolee met bail requirements for the new charges and was detained solely on the Board's detainer, time in custody was to be credited against the original sentence. *See Smith v.*

the general law in this Commonwealth respecting how credit should be allocated for a [CPV] who receives a new sentence of incarceration[.]" *Smith*, 171 A.3d at 768.

In *Smith*, the Pennsylvania Supreme Court rejected an argument similar to Cook's. The *Smith* Court explained:

> [W]e disagree . . . that the primary jurisdiction doctrine requires confinement credit be allocated to the sentence of the jurisdiction which first arrests a defendant.
>
> . . . .
>
> **The doctrine of primary jurisdiction** simply relates to the question of which sovereign exercises jurisdiction first over a defendant; it **does not govern how credit should be allocated when two or more sovereigns impose sentences**. *See id.*

*Smith*, 171 A.3d at 769-70 (emphasis added).

The primary jurisdiction doctrine clearly does not offer Cook relief in the instant matter because it "does not govern how credit should be allocated when two or more sovereigns impose sentences." *Smith*, 171 A.3d at 770. Accordingly, Cook's argument that his pre-sentence confinement credit must be applied to his Original Sentence pursuant to the primary jurisdiction doctrine fails. Because this Court agrees that Cook's claim has no merit, Counsel's Application is granted, and the Board's order is affirmed.

 

_____

ANNE E. COVEY, Judge

---

*Pa. Bd. of Prob. & Parole*, 133 A.3d 820 (Pa. Cmwlth. 2016), *rev'd on other grounds*, 171 A.3d 759 (Pa. 2017); *see also Gaito*.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bobby Leon Cook, :
            Petitioner :
             :
      v. :
             :
Pennsylvania Parole Board, : No. 403 C.D. 2024
            Respondent :

## O R D E R

AND NOW, this 10th day of November, 2025, Nicholas E. Newfield, Esquire's Application for Leave to Withdraw Appearance is GRANTED, and the Pennsylvania Parole Board's March 8, 2024 order is AFFIRMED.

The Prothonotary is directed to serve a copy of this Opinion and Order on Petitioner Bobby Leon Cook.

_____
ANNE E. COVEY, Judge